# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 25, 2011 Session

## STATE OF TENNESSEE v. WILLIE CLARK BENNETT

**Appeal from the Criminal Court for Knox County**
**No. 88740      Richard R. Baumgartner, Judge**

---

**No. E2010-00859-CCA-R3-CD Filed March 22, 2011**

---

The defendant, Willie Clark Bennett, appeals the trial court's revocation of his probation. In this appeal, he contends that the trial court erred by failing to suppress evidence obtained during a search of his person.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Mark Stephens, District Public Defender; and Robert C. Edwards, Assistant District Public Defender, for the appellant, Willie Clark Bennett.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Kenneth F. Irvine, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On May 7, 2008, the defendant pleaded guilty to two counts of facilitation of the sale of a controlled substance in exchange for a total effective sentence of four years.  On December 11, 2008, the trial court entered judgments of conviction imposing a probationary sentence of three years and 148 days.  The trial court further ordered the defendant to undergo inpatient drug treatment and to reside in a halfway house upon release.  On June 1, 2009, a probation violation warrant issued alleging that the defendant had violated the terms of his probationary sentence by failing to pay court-ordered child support, by violating his curfew, by submitting a diluted urine sample for a drug screen, and by failing to provide verification of his payment of court costs.  An amended probation violation warrant issued

on June 3, 2009, alleged that the defendant had also violated the terms of his release by failing to attend alcohol and drug classes. By amended probation violation warrants issued on July 9 and October 29, 2009, the State added claims that the defendant had violated his probation by attempting to contact his estranged wife against a court order, by being discharged from the halfway house, by violating his curfew on two occasions, and by garnering a new arrest for violating the drug free school zone act.

The defendant moved to suppress any evidence obtained from the search of his person conducted on October 29, 2009, on grounds that the search was unreasonable. The defendant noted in his motion that the suppression claim had no bearing on the "technical violations" alleged by the State.

At the March 5, 2010 hearing joining the defendant's suppression claim and the revocation warrants, Lisa Mooneyham, the defendant's probation officer, testified that the defendant was placed on enhanced probation on December 11, 2008, after her department recommended that the defendant not be placed on regular probation. At that point in time, the defendant was placed on the waiting list for a bed at an inpatient drug rehabilitation facility. As part of his probation, the defendant signed a document detailing the terms of his probationary sentence that included the following provision: "I agree to a search without a warrant of my person, vehicle, property, and place of residence by a PO officer or other law enforcement at any time." The defendant performed fairly well on probation until May 30, 2009, when he was discovered at Phatz night club at 3:40 a.m., which was a violation of the terms of his probation. In addition, an attachment against the defendant was issued based upon his failure to pay child support. The defendant was arrested pursuant to the attachment, and Ms. Mooneyham ordered the defendant to enter Steps House.

As Ms. Mooneyham prepared a violation warrant based upon the defendant's arrest and other violations related to his being at Phatz, she also discovered that the defendant had failed to attend required CAPP alcohol and drug classes. During that same time period, one of the urine samples submitted by the defendant was returned from the laboratory with a notation that the sample showed dilution.

The defendant was later discharged from Steps House for failure to comply with the rules regarding "honesty and responsibility" and for having contact with his wife. Ms. Mooneyham explained that she had directed the defendant to have no contact with his wife and that the court eventually ordered the two to have no contact. Apparently, the defendant continued to try to contact his wife in violation of that court order.

The defendant had two more curfew violations on October 23 and 29, 2009. The defendant, despite having a job with a construction company, failed to pay either court

costs or probation fees. He also failed to perform the required community service and failed to report a change of address. The defendant was stopped by the Knoxville Police Department on October 23, 2009, after his curfew, for a registration violation. Although the officers noted that the defendant was driving on a suspended license, the defendant was not given a citation. On October 29, 2009, the defendant was arrested for a violation of the drug free school zone act. Ms. Mooneyham stated that she would not recommend that the defendant be reinstated to probation given his pattern of violating the terms of his release into the community. She explained, "[W]e went above and beyond the call of duty with [the defendant]. The rules are very simple. . . . I think he's in a certain pattern, it's hard for him to change."

During cross-examination, Ms. Mooneyham said that she had "reluctantly agreed" that the defendant be released from custody after Steps House "kept giving him different amounts he had to pay to get in which was ridiculous." She said that the purpose of the defendant's release was that he earn money to return to Steps House. Ms. Mooneyham stated that she had tried "very hard" to provide the defendant with some structure in his life but that "he was very stubborn" and "just wants to do things his own way sometimes."

Knoxville Police Department ("KPD") patrol officer John Holmes testified that on October 28, 2009, he conducted a search of a residence located at 3329 Fontana Street. He stated that the search, which was conducted pursuant to a warrant that named the defendant, was the culmination of a two-month investigation into narcotics trafficking from the Fontana Street residence. He said that the defendant, who was alone in the living room of the residence, was detained and subjected to a brief pat down immediately upon the officers' entry into the residence. After a brief sweep of the house, Officer Holmes returned to the living room and found the defendant "lying on the ground handcuffed" with the "zipper to his pants unzipped." The defendant was then brought to his feet, and officers conducted a search of his clothing and the immediate area where the defendant was when they entered the residence. The defendant was then placed in a chair to wait while the residence was searched.

During the search, officers received "some indication that there was maybe more substance in the residence or on [the defendant]." They then conducted another search of the living room and a more thorough search of the defendant, which involved having the defendant pull down his pants and underwear to "around his knee" for a visual inspection of his crotch area. Officer Holmes noted that the defendant "was keeping his legs real tight together as if he was trying to conceal something," but he nevertheless allowed the defendant to pull his pants up and sit down. According to Officer Holmes, the entire process lasted less than a minute.

As the defendant sat handcuffed in the chair, officers completed the search of the residence but "found nothing in the residence of substance." Based largely upon the defendant's earlier posturing, officers made the decision to conduct a "more intrusive search of his person." Officer Holmes did not conduct that search but stood just inside the kitchen area. Before that search, officers found $530, $40 of which was marked buy money that had been used by a confidential informant to purchase cocaine just before the search, and a cellular telephone.

During cross-examination, Officer Holmes testified that he was aware that the defendant was on probation when he conducted the search of the residence and of the defendant. He stated that the initial determination to have the defendant drop his pants was made because "there was indication from a confidential source that there was more substance in the possession of [the defendant]." During the first search conducted of the defendant with his pants down, officers did not touch the defendant's crotch area or ask the defendant to manipulate his genitals or buttocks. The defendant was directed to bend over but did not comply with the order. When officers found no more drugs in the house, Officer Holmes and his supervisor, Sergeant Tony Willis, made the determination "to do a more intrusive search of his person." Officer Holmes testified that "the way he was standing, as if he had something concealed on his person, the fact that his pants were unzipped, he was the only person in the room when we encountered him, the previous history of dealing with [the defendant] and being in possession of drugs" led him to conclude that a more thorough search was warranted.

KPD Officer Jeremy Maupin, who participated in the search of the Fontana Street residence and of the defendant's person, testified that he "went into the living room and had [the defendant] stand up, had him actually to bend over, and . . . retrieved a clear plastic baggie containing an off-white rock-like substance believed to be crack cocaine." Officer Maupin stated that the cocaine was located between the defendant's "scrotum and his left thigh." He said that the amount of crack taken from the defendant's person "was approximately 4 to 5 grams of crack." Officer Maupin said that the defendant helped pull his pants down but "gave a little resistance" when ordered to bend over. Officer Maupin explained that the defendant was "keeping his thighs together" and that "[h]e actually tried to adjust something in between his legs." At that point, Officer Maupin "told him to keep his hands away from there, not knowing what was hidden, [be]cause he did definitely give indicators something was hidden inside of his crotch area."

Officer Maupin denied placing his fingers or any other object into "any orifices" of the defendant's body and denied using force when looking for the contraband. He said that the entire search took less than a minute. Officer Maupin clarified that he "actually reached in" to retrieve the cocaine from "between his left side of his scrotum and

-4-

his left thigh" after seeing the plastic bag and white substance.

During cross-examination, Officer Maupin testified that the defendant's pants were pulled down to the "[m]iddle of his thigh" and that the defendant was allowed to keep his shirt on. Officer Maupin said that when he ordered the defendant to spread his legs, the defendant "reached in trying to adjust something." Officer Maupin denied spreading the defendant's "butt cheeks" but acknowledged that he "had to move his thigh away and pull the substance out." When the defendant failed to move his thighs apart sufficiently, Officer Maupin had the defendant "take one leg out of the pants" so that he could spread his legs farther. Officer Maupin said that the defendant did not express any discomfort or embarrassment during the search.

The defendant testified that during the initial pat down, officers did not reach into his crotch area and that they confined the very brief search to the exterior of his clothing and his pockets. During the second search, they searched "the same places but more thoroughly . . . like without going in [his] pants, just pat all around." During the third search, officers asked him to pull down his pants and bend over but did not touch either his buttocks or his scrotum. Approximately half an hour later, officers approached him again and conducted a fourth search. The defendant claimed that during the fourth search, officers removed his handcuffs, pants, and underwear, ordered him to bend over, and directed him to "hold [his] scrotum up, open [his] cheeks." He said that officers looked at him for approximately six minutes and asked him to spread his buttocks and lift his scrotum at least four times. He claimed that officers did not find any contraband during the fourth search and that he was ordered to put his clothes back on. According to the defendant, more officers returned for a fifth search, during which they ordered him to remove all of his clothing. He said that he was again ordered to lift his scrotum and spread his buttocks. The defendant claimed that he finally spread his legs "as far as they would go" because he "heard someone say in the background, 'Get the Tasers.'"

During cross-examination, the defendant admitted that officers discovered more than $500 on his person but denied that any portion of the money was marked buy money. The defendant admitted having crack cocaine hidden in his crotch area.

At the conclusion of the hearing, the trial court took the defendant's motion to suppress and the probation violation warrant under advisement. On March 25, 2010, the court ruled from the bench that it was going to deny the defendant's motion to suppress on grounds that the search was reasonable under the totality of the circumstances. In addition, the trial court revoked the defendant's probation on the basis of his possession of cocaine. In its later filed written order, the trial court ruled,

Based on the totality of the circumstances in the instant case (including the defendant's status as a probationer, the statement by the confidential informant, and the fact that the defendant's fly was down when the officers entered the home), this court finds that this search did not violate the defendant's reasonable expectation of privacy.

In its order revoking the defendant's probation, the trial court concluded that the defendant "has been guilty of violating the laws of this State, and has otherwise violated the conditions of probation."

Following the revocation of his probation, the defendant filed a timely notice of appeal in this court. In this appeal, the defendant contends that the trial court erred by denying his motion to suppress evidence obtained during the October 29, 2009 search because the repeated search of his unclothed genital area was unreasonable. The State asserts that the trial court properly denied the motion because the search was reasonable and supported by probable cause. In addition, the State argues that "the record contains ample evidence to support the trial court's revocation" even in the absence of the evidence obtained during the October 29, 2009 search.

Initially, the trial court's order revoking the defendant's probation noted that the defendant violated both the laws of the state and the conditions of his probationary sentence. The violation warrants alleged myriad violations other than the defendant's possession of cocaine on October 29, 2009, and the defendant did not contest those violations at the hearing on the violation warrants. In his brief, the defendant does not even address the other alleged violations and does not address the propriety of the revocation itself, instead addressing his argument to the suppression issue. The record amply demonstrates that the defendant violated the terms of his probation by violating his curfew, by failing to pay his court costs, by failing to attend required drug and alcohol classes, by failing to comply with the conditions imposed by Steps House, and by contacting his wife in violation of a court order.[1] Had the trial court revoked the defendant's probation on any or all of these grounds, we would have no trouble affirming the trial court's exercise of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430

---

[1]The defendant also admitted possessing crack cocaine on October 29, 2009, which is a violation of probationary terms. The trial court, however, was careful to limit the defendant's testimony to the issue raised in the motion to suppress. "When a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Simmons v. United States*, 390 U.S. 377, 394 (1968). Accordingly, we will not treat the defendant's testimony as an admission that he violated the terms of his probation.

(Tenn. Crim. App. 2007). The trial court, however, never made any specific findings with regard to any of these alleged violations. Instead, the court stated at the March 25, 2010 proceeding that it was revoking the defendant's probation on grounds that he possessed cocaine on October 29, 2009. Consequently, our consideration of the revocation issue is limited to this single alleged violation, which requires that we address the propriety of the trial court's denial of the defendant's motion to suppress.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, questions of credibility, the weight and value of the evidence, and the resolution of conflicting evidence are matters entrusted to the trial judge, and this court must uphold a trial court's findings of fact unless the evidence in the record preponderates against them. *Odom*, 928 S.W.2d at 23; *see also* Tenn. R. App. P. 13(d). The application of the law to the facts, however, is reviewed de novo on appeal. *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998). We review the issue in the present appeal with these standards in mind.

To be sure, both the state and federal constitutions offer protection from unreasonable searches and seizures with the general rule being that a warrantless search or seizure is presumed unreasonable and any evidence obtained therefrom subject to suppression.[2] *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."); Tenn. Const. art. I, § 7 ("That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures . . . ."). That being said, probationers, by virtue of their release status, have a diminished expectation of privacy, *see United States v. Knights*, 534 U.S. 112, 118-19 ( 2001), and a concomitant diminished protection from warrantless search and seizure, *see id.* at 121. This is particularly true where, as here, a probationer accepts as a condition of his probation that he may be subjected to a warrantless search of his person, place of residence, and vehicle at any time. *Id.* at 118 (observing that "the probation search condition" was a "salient circumstance" in a review of the totality of the circumstances surrounding the search of Knights' apartment); *see also State v. Davis*, 191 S.W.3d 118, 121 (Tenn. Crim. App. 2006) (examining a consent to search provision essentially identical to that in this case and recognizing that "a warrantless search

_____

[2]Although the search of the Fontana Street residence was conducted via a warrant that named the defendant as an individual who had exercised control over that property, the warrant did not specifically command officers to search the defendant's person. Instead the warrant commanded the officers to seize the defendant in the event any of the items described in the search warrant were discovered inside the Fontana Street residence. Accordingly, the search of the defendant will be examined as a warrantless search of the defendant's person.

condition of probation significantly diminishes a probationer's reasonable expectation of privacy"). Thus, the Court said, when the terms of probation include a consent to warrantless search, a warrantless search of a probationer need only be supported by reasonable suspicion. *Knights*, 534 U.S. at 122 ("We therefore hold that the warrantless search of Knights, supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment.").

Although both parties cite *State v. Turner*, 297 S.W.3d 155 (Tenn. 2009), in support of their respective positions, *Turner* is distinguishable from this case on three important points. First, at issue in that case was Turner's motion to suppress *at trial* evidence obtained during a warrantless search. When evidence has been seized unconstitutionally, the exclusionary rule bars introduction of that evidence at trial. *See generally Weeks v. United States*, 232 U.S. 383, 393-98 (1914). As this court recognized in *State v. Hayes*, 190 S.W.3d 665 (Tenn. Crim. App. 2005), however, the exclusionary rule, in its traditional form, does not apply during probation revocation proceedings "regardless of whether a probationer has consented to searches as a condition of probation." *State v. Hayes*, 190 S.W.3d 665, 670 (Tenn. Crim. App. 2005). Before unconstitutionally seized evidence will be excluded from a probation revocation proceeding, the defendant must establish that the evidence was "obtained as a result of police harassment or obtained in a particularly offensive manner." *Id.* at 671.

Second, the search challenged in *Turner* was not supported by any form of individualized suspicion. Instead, officers searched Turner's person and residence solely because she had consented to warrantless searches as a condition of her parole. Our supreme court held that "parolees who are subject to a warrantless search condition may be searched without reasonable or individualized suspicion." Here, the defendant seeks to exclude from his probation revocation hearing evidence obtained following a search that was, as we will discuss more fully below, supported by individualized suspicion.

Finally, *Turner* specifically limited its application to parolees and leaves open the question whether a warrantless search of a probationer unsupported by any individualized suspicion would pass constitutional muster. Although the defendant asserts that the question whether the rule in *Turner* should be extended to probationers is "ripe for determination," the fact that individualized suspicion supports the challenged search in this case removes this case from within the ambit of *Turner* and places it squarely within the ambit of *Knights* and *Davis*.

Turning now to the facts of this case, the accredited testimony of Officer Holmes established that KPD officers executed a search warrant at the Fontana Street residence as the culmination of more than two months' investigation into illegal narcotics

trafficking at the residence, investigation which included information that the defendant himself had sold drugs from the residence. When officers entered the residence, the defendant was alone in the living room, and the zipper of his pants was down. A search of the exterior of the defendant's clothing revealed a large amount of cash, $40 of which was marked buy money. After that search, information from a confidential source established that the defendant was likely concealing drugs on his person. At that point, Officer Holmes, who was aware of the defendant's status as a probationer, authorized a more thorough search of the defendant that required the defendant to pull down his pants and submit to a visual examination of his groin area. Although officers ended the search and permitted the defendant to pull up his pants, Officer Holmes noted that the defendant made special effort to keep his legs tightly together. Given the information from the confidential source, the defendant's posturing during the earlier searches, and the defendant's release status, Officer Holmes authorized a final, more thorough search of the defendant's person. Officer Maupin's accredited testimony established that the defendant was directed to take down his pants, remove one leg from his pants, and spread his legs as far as they would go. Officer Maupin then asked the defendant to bend over, and at that point, he saw the plastic baggie containing a white, rock-like substance wedged between the defendant's scrotum and thigh. Officer Maupin denied touching the defendant's genitals or placing his hands into any orifice of the defendant's body.

Because the defendant had signed an unconditional consent to warrantless searches of his person, place, and vehicle, the State need only have established that reasonable suspicion supported the searches in this case. *See Knights*, 534 U.S. at 122; *Davis*, 191 S.W.3d at 121. That the defendant was alone in the living room with his pants unzipped, that he had marked buy money in his possession, and that he attempted to keep his legs together during the earlier searches provided the officers with at least reasonable suspicion to believe that the defendant was concealing contraband inside his pants. We also note that even had we concluded that the searches in this case were not supported by reasonable suspicion, the record does not demonstrate that they were conducted "in a particularly offensive manner" that would require the exclusion of evidence seized during the search from the hearing to revoke the defendant's probation.

Finally, Officer Maupin's testimony that the defendant possessed cocaine on October 29, 2009, supports the revocation of the defendant's probation in this case. The trial court may revoke probation upon a finding by a preponderance of the evidence that the defendant has violated the conditions of probation, *see* T.C.A. § 40-35-311(e) (2006), and the trial court's ruling in this regard will only be overturned upon a showing of an abuse of the trial court's discretion, *see Shaffer*, 45 S.W.3d at 554. The conditions of the defendant's probation required that he not violate the laws of this state, and the evidence adduced at the revocation hearing established by a preponderance of the evidence that the defendant

possessed cocaine on October 29, 2009, in violation of Tennessee Code Annotated section 39-17-417.

Accordingly, the judgment of the trial court denying the defendant's motion to suppress and revoking his probation is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE