IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 25, 2021 Session

**STATE OF TENNESSEE v. BRET A. WINES**

**Appeal from the Criminal Court for Sullivan County**
**No. S62568-569      James F. Goodwin, Jr., Judge**

_____

**No. E2020-00957-CCA-R3-CD**

_____

The Defendant previously entered guilty pleas to various drug related offenses and received an effective sentence of fourteen years' probation. Four affidavits and arrest warrants alleging violations of his probation subsequently issued, and following a hearing conducted via Zoom video conferencing technology ("Zoom"), the trial court revoked his probation and ordered the Defendant to serve his sentence in confinement. In this appeal, the Defendant contends that (1) it was plain error for the trial court to conduct the revocation hearing via Zoom because it "failed to make a specific finding, utilizing the law as articulated in Maryland v. Craig [497 U.S. 838 (1990)]," in violation of his right of confrontation under the Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution; and (2) the sentence imposed by the trial court was excessive. Upon our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

Frances X. Santore, Jr., Greenville, Tennessee, for the Defendant-Appellant, Bret A. Wines.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Teresa Nelson, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On April 23, 2015, in case number S62568, the Defendant entered guilty pleas to possession of marijuana, possession of drug paraphernalia, possession of buprenorphine,

possession of clonazepam, evading arrest, and felony possession of marijuana, and received and effective four-year sentence to be served consecutively to case numbers S61576 and S62569.[1] On the same day, in case number S62569, the Defendant entered guilty pleas to facilitation of initiation to manufacture methamphetamine and received a sentence of ten years to be served consecutively to case number S62568, for an effective fourteen-year sentence. The trial court ordered the Defendant's sentence to be served on supervised probation.

On June 19, 2018, the first affidavit and arrest warrant issued for the Defendant alleging multiple violations of probation including: (1) on May 19, 2018, the Defendant was charged with three new drug, traffic, and tampering with evidence offenses; and (2) on May 11, 2018, the Defendant's urine tested positive for methamphetamine, which was confirmed by an independent laboratory. On July 30, 2018, a second affidavit and arrest warrant issued for the Defendant alleging additional violations of his probation including: (1) on June 29, 2018, the Defendant committed the new offenses of speeding, lights required on a vehicle, and violation of financial responsibility law; and (2) on June 29, 2018, the Defendant refused to consent to a search of his vehicle as required by rule seven of his probation conditions. On January 8, 2020, a third affidavit and arrest warrant issued for the Defendant alleging that the two prior affidavits and violations were still pending and that (1) on November 27, 2019, the Defendant tested positive for methamphetamines, buprenorphine, marijuana, and MDMA; and that there was insufficient sample to send to laboratory for analysis; accordingly the Defendant was required to report back on December 2, 2019, for a follow-up drug screen; (2) on December 2, 2019, the Defendant failed to report as instructed; Probation Officer Drew March spoke to him by phone, the Defendant advised him that he had tried to "self-catheterize" to avoid a positive drug screen, the Defendant admitted he had used methamphetamines on or about November 26, 2019, and non-prescribed buprenorphine on or about December 1, 2019. On February 4, 2020, a fourth affidavit and arrest warrant issued for the Defendant restating the prior three affidavits and violations of probation and alleging that on January 8, 2020, the Defendant was arrested on a previous violation of probation and instructed to report to his probation officer upon immediately posting bond; the Defendant posted bond on January 8, 2020, and had failed to report to probation since that time.

The transcript of the June 18, 2020 probation violation hearing shows that the Defendant appeared via Zoom from the jail and his attorney also appeared via Zoom.[2] Prior

---

[1] The revocation order notes that case number S61576 expired on September 16, 2016, prior to the allegations in this case.

[2] The probation revocation hearing occurred during a pandemic, a world-wide public health emergency due to the continuing spread of the novel coronavirus and the deadly disease it causes known as COVID-19. During this time, all Tennessee courts were subject to various orders of the Tennessee Supreme

to the hearing, the trial court ensured that the Defendant and his attorney could hear and see. Defense counsel advised the court that "it's stipulated as to the violations, it's just to the extent of the punishment." The trial court clarified that the Defendant intended to enter a plea of guilty to the violation warrants and ask for a disposition hearing, and defense counsel agreed. The trial court then advised the Defendant of his rights pertaining to the allegations in the probation violation petition. The trial court specifically advised the Defendant that he had "a right to be present in court" at the hearing. The Defendant affirmed that he knowingly, freely, and voluntarily waived his rights, and wished to enter a guilty plea to the violations in the petition. Defense counsel stipulated to the factual basis set forth in each probation violation affidavit and warrant, and the trial court determined that there was sufficient proof for a trier of fact to have found the Defendant guilty of violating his probation.

The Defendant testified that he had been addicted to drugs since he was 13 or 14 years old. He had twice attempted to receive out-patient treatment but was unsuccessful. He said he now realized that he needed long term in-patient treatment and his family was helping him find a facility. He wanted to do "whatever it takes to … get [his] life straightened back out" and get [his] daughter back. He had completed "25 sets of Bible studies" and begged the court for mercy. On cross-examination, the Defendant agreed he had a lengthy criminal history and previously had been required to attend drug and alcohol treatment in misdemeanor cases. There were three items exhibited to the hearing, without objection: Notice of the Defendant's Prior Felony Convictions (collective convictions); Notice of the Defendant's Prior Misdemeanor Convictions and probation violations (collective convictions); summary of the "TOMIS" report reflecting the Defendant's arrest history.

Following closing argument of the parties, the trial court revoked the Defendant's probation upon finding that the Defendant was "either unwilling or unable to comply with release into the community" and ordered him to serve his fourteen-year sentence in the Tennessee Department of Correction. The trial court entered the revocation order on June 22, 2020, and the Defendant filed a timely notice of appeal. His case is now properly before this court for review.

## ANALYSIS

For the first time on appeal, the Defendant argues that the trial court erred in conducting his probation hearing via Zoom video conferencing in violation of his right to

---

Court, which discouraged in-person court activity. See Order, In Re: COVID-19 PANDEMIC, No. ADM2020-00428 (Tenn. May 26, 2020) (stating that trial courts should "continue to conduct as much business as possible by means other than in-person court proceedings").

confrontation under the Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution. He further claims that the failure of the trial court to conduct the probation revocation hearing in person constitutes plain error.[3] Finally, the Defendant contends that the "punishment meted out by the trial court was excessive." In response, the State contends that the Defendant has failed to establish plain error because prior to the probation revocation hearing the Defendant "expressly confirmed that he was 'freely and voluntarily giving up' the 'right to be present in court' and 'the right to confront and cross examine witnesses against [him].'" Additionally, the State notes, there can be no plain error here where the State did not offer any witnesses for the Defendant to confront at the hearing. Finally, the State contends the trial court exercised proper discretion in fully revoking the Defendant's probation. We agree with the State.

The Defendant does not expressly concede on appeal that he failed to object to the revocation hearing being conducted via Zoom. Instead, he argues "if the State contends [waiver]," then the trial court's failure to conduct an in-person hearing was plain error. The Defendant then erroneously claims that "nowhere does it appear that the Court asked any party to waive [his] personal appearance." To be clear, the record shows that upon being advised of his right to be present in court, the Defendant expressly affirmed that he knowingly, freely, and voluntarily waived his rights, and that he wished to enter a guilty plea to the violations in the petition via Zoom. Accordingly, our review is limited to plain error. Tenn. R. App. P. 36(a), (e). Under the plain error doctrine, "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). In order for this court to find plain error,

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). "It is the accused's burden to persuade an appellate court that the trial court committed plain error." State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007) (citing U.S. v. Olano, 507 U.S. 725, 734 (1993)). "[T]he presence of all five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear

---

[3] We have combined the Defendant's issues one and two for clarity.

from the record that at least one of the factors cannot be established." Smith, 24 S.W.3d at 283. We evaluate the Defendant's claims of error with these principles in mind.

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Article I, section 9 of the Tennessee Constitution states, "That in all criminal prosecutions, the accused hath the right to . . . meet the witnesses face to face." Probation revocation proceedings are not part of a criminal prosecution, and thus, a defendant is not entitled to the full panoply of rights afforded a defendant in a criminal proceeding. See State v. Walker, 307 S.W.3d 260, 264 (Tenn. Crim. App. 2009); State v. Hayes, 190 S.W.3d 665 (Tenn. Crim. App. 2005). The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation. Black v. Romano, 471 U.S. 606, 610, 105 S. Ct. 2254, 2257 (1985) (citing Bearden v. Georgia, 461 U.S. 660, 666, and n. 7, 103 S. Ct. 2064, 2069 (1983)). In Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S. Ct. 1756 (1973), the United States Supreme Court made the due process requirements with regard to parole violation hearings, see Morrissey v. Brewer, 408 U.S. 471, 92 S. Ct. 2593 (1972), applicable to probation revocation proceedings. The minimal due process requirements for probation revocation hearings include:

> (a) [W]ritten notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole.

Gagnon v. Scarpelli, 411 U.S. at 782 (citing Morrissey v. Brewer, 408 U.S. at 489).

We need not tarry long in resolving this issue. Simply put, we are puzzled by the Defendant's position in this case. The State correctly points out and the record clearly reflects that the Defendant expressly waived his right to be physically present in court for the probation revocation hearing. The Defendant is, therefore, prohibited from now claiming error on appeal based upon the same grounds. Additionally, as mentioned above, a defendant's right of confrontation in a probation hearing stems from the due process clause, and it is not absolute. Morrissey v. Brewer, 408 U.S. at 489 ("the process should be flexible enough to consider evidence including letters, affidavits, and other material that would be admissible in an adversarial criminal trial."); State v. Walker, 307 S.W.3d at 265

(noting that less process is due at a probation revocation hearing than during a criminal trial). The Defendant's reliance on federal and state confrontation clause law is, thus, misplaced. The functional purpose of the confrontation clause is nevertheless to ensure the defendant an opportunity for meaningful cross-examination. See Kentucky v. Stincer, 482 U.S. 730, 739 (1987). The record shows the Defendant stipulated to the factual basis in each of the four violation of probation affidavits. By doing so, the only issue to be determined by the trial court was the appropriate sentence. In other words, the probation revocation hearing was uncontested, the State put forth no witnesses, and the confrontation clause was not implicated. Accordingly, consideration of this issue is not necessary to do substantial justice because the Defendant has failed to establish a breach of a clear and unequivocal rule of law or that a substantial right was adversely affected during the hearing.

The Defendant next argues that the "punishment meted out by the trial court for [his] probation violation was excessive." The State argues, and we agree, that the trial court properly ordered the Defendant's sentence to be served in confinement.

After determining that a defendant "has violated the conditions of probation and suspension of sentence by a preponderance of the evidence, the trial judge shall have the right . . . to revoke the probation and suspension of sentence, and [c]ause the defendant to commence the execution of the judgment as originally entered, or otherwise, in accordance with §40-35-310[.]" T.C.A.§ 40-35-311(e)(1)(A). Probation revocation rests within the sound discretion of the trial court, and this court will not disturb the trial court's ruling absent an abuse of that discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001) (citing State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, the defendant must show "that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Harkins, 811 S.W.2d at 82 (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). Once the trial court decides to revoke a defendant's probation, it may (1) order confinement; (2) order the sentence into execution as initially entered, or, in other words, begin the probationary sentence anew; (3) return the defendant to probation on modified conditions as necessary; or (4) extend the probationary period by up to two years. See State v. Hunter, 1 S.W.3d 643, 647 (Tenn. 1999) (citations omitted); T.C.A. §§ 40-35-308, -310, -311.

In this case, the Defendant stipulated to the allegations in each of the four affidavits supporting the violation of his probation. Accordingly, it was within the authority of the trial court to order confinement consistent with the Defendant's original fourteen-year sentence. In his brief to this court, the Defendant argues that confinement was excessive because he is a "drug addict." He also cites statistics from the website of the Administrative Office of the Courts to show that the sentence "meted out" by the trial court was "grossly

disproportionate to the state mean average." These statistics, however, do not have any bearing on the original terms of the Defendant's plea agreement and sentence. The Defendant also argues that he is entitled to drug counseling and rehabilitation, but the record shows he was given prior opportunities at probation/parole and was unsuccessful. An accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing. See State v. Jennifer Renee Dennis, No. M2010-01596-CCA-R3-CD, 2011 WL 1844080, at *3 (Tenn. Crim. App. May 16, 2011) (citations omitted), perm. app. denied (Tenn. July 18, 2011). We conclude that the trial court did not abuse its discretion in ordering the Defendant to serve the balance of his fourteen-year sentence in confinement. He is not entitled to relief.

## CONCLUSION

Based upon the foregoing, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE