IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 16, 2005

## STATE OF TENNESSEE v. KENNETH HAYES

**Appeal from the Criminal Court for Davidson County**
**No. 97-C-1735     Steve Dozier, Judge**

───────────────

**No. M2004-00715-CCA-R3-CD - Filed June 28, 2005**

───────────────

The Appellant, Kenneth Hayes, appeals the revocation of his probation by the Davidson County Criminal Court. In 1997, Hayes pled guilty to felony possession of cocaine and was sentenced to a term of eight years with service of one year in confinement followed by supervised probation. In 2004, a probation violation warrant was issued alleging that Hayes violated probation by possessing cocaine. At the revocation hearing, Hayes sought suppression of the cocaine upon grounds that it was illegally seized. The trial court found that the police search was valid and revoked Hayes' suspended sentence. After review, we conclude that the cocaine was illegally seized. Notwithstanding, we further conclude that in the absence of police harassment or that the evidence was obtained in a particularly offensive manner, the exclusionary rule is not applicable to probation revocation proceedings. Accordingly, the order of revocation is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Brent Horst, Nashville, Tennessee, for the Appellant, Kenneth Hayes.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On November 25, 1997, the Appellant pled guilty to possession of more than .5 grams of cocaine with intent to sell. He was sentenced as a Range I standard offender to an eight-year split-

confinement sentence with one year to be served in confinement and the remainder to be served on supervised probation. On January 28, 2004, a violation warrant was filed against the Appellant alleging that he violated the terms of probation by possessing 2.2 grams of cocaine and by failing to report the arrest to his probation officer.

Prior to the February 2, 2004 revocation hearing, the Appellant filed a motion to suppress the evidence obtained as a result of his December 26, 2003 arrest. During a combined revocation and suppression hearing, Officer Jacob Pilarski with the Metro Police Department testified that he was on routine patrol of Twelfth Avenue North between Buchanan and Clay Streets on the evening of December 26, 2003. While there, he noticed the Appellant, whom he was not familiar with, sitting in a parked car in front of 1902 Twelfth Avenue, an area known for drug activity. The Appellant remained seated in the vehicle for five to ten minutes before Officer Pilarski approached. Pilarski testified that the following encounter occurred after approaching the vehicle:

> I just asked him - - he was sitting in this vehicle. I asked him what he was doing there, if he had ID, if he had a driver's license. I asked if I could view it, which he let me.
> At that point I went and checked his record, checked for warrants.

The officer testified that the record check revealed "three or four prior drug-possession charges." At this point, the officer returned to the vehicle and continued his questioning of the Appellant. "I asked him if he had any illegal narcotics in his vehicle, crack, marijuana, cocaine, drugs, any - - any kinds of - - type of drug, pistols, guns. . . ." The Appellant responded that he did not. The officer then asked the Appellant "to step from the vehicle." The Appellant was placed against his car and searched, but the pat-down search revealed no contraband. The officer then asked the Appellant if he could search the vehicle, and the Appellant consented. During the search of the vehicle, the officer found approximately 2.2 grams of crack cocaine located in the fuse panel of the dashboard.

The trial court denied the Appellant's motion to suppress finding that "there was a reasonable suspicion for the officer to approach the defendant and conduct an inquiry."[1] Based upon this finding, the court revoked the Appellant's suspended sentence and ordered that the remainder of his original eight-year sentence be served in confinement. This appeal followed.

## Analysis

A trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *see also State v.*

---

[1] The officer testified that while on patrol of Twelfth Avenue North, he "saw a group of guys," and upon his approach the group dispersed leaving behind a jacket containing marijuana and scales. The State does not argue nor is there any suggestion that the Appellant was part of that group. Indeed, the officer testified that the Appellant was seated alone in his car during the events. Apparently these facts were relied upon by the trial court to find reasonable suspicion.

*Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002). This court reviews the trial court's application of the law to the facts under a *de novo* standard of review without deference to the determinations of the trial court. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001).

## I. Legality of the Search

Both the Fourth Amendment of the United States Constitution and Article 1, Section 7 of the Tennessee Constitution protect against unreasonable search and seizure. However, these constitutional protections "are implicated only when a police officer's interaction with a citizen impermissibly intrudes upon the privacy or personal security of the citizen." *State v. Daniel*, 12 S.W.3d 420, 424 (Tenn. 2000).

Our supreme court has held that:

> [W]hat begins as a consensual police-citizen encounter may mature into a seizure of the person. While many of the circumstances in this case point in the direction of a consensual police-citizen encounter, one circumstance reflects a distinct departure from the typical consensual encounter - - Officer Wright's retention of Daniel's identification to run a computer check. Without his identification, Daniel was effectively immobilized. Abandoning one's identification is simply not a practical or realistic option for a reasonable person in modern society. Contrary to the State's assertion, when an officer retains a person's identification for the purpose of running a computer check for outstanding warrants, no reasonable person would believe that he or she could simply terminate the encounter by asking the officer to return the identification. Accordingly, we hold that a seizure within the meaning of the Fourth Amendment and Article I, section 7 occurred when Officer Wright retained Daniel's identification to run a computer warrants check.

*Id.* at 427 (internal citations omitted). The police officer's interaction with the Appellant in the instant case is similar to, if not more intrusive than, that in *Daniel*. As in *Daniel*, the record is void of any evidence of reasonable suspicion of criminal activity. We conclude that the holding in *Daniel* is controlling in this case and that the Appellant's detention constituted a *de facto* arrest. As such, we conclude that the trial court's ruling that reasonable suspicion existed was error.

Notwithstanding the unlawful seizure, we must next determine whether the Appellant's consent, obtained during the illegal detention, was obtained by exploitation of the Fourth Amendment illegality. *See State v. Huddleston*, 924 S.W.2d 666, 674 (Tenn. 1996) (citing *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963)). Applying the considerations of *Huddleston*, no *Miranda* warnings were provided to the Appellant, consent immediately followed the illegal seizure, and no intervening event occurred. These facts weigh against a finding of attenuation of the taint. Accordingly, we conclude that the search and seizure of the cocaine was unreasonable under Fourth Amendment protections.

## II. Application of the Exclusionary Rule

Notwithstanding our conclusion that an unlawful seizure occurred, our review is not complete. The question remains as to whether the exclusionary rule is applicable to revocation proceedings.[2] A probation violation hearing is not part of the criminal prosecution process, as revocation of probation is remedial rather than punitive. *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593 (1972); *see also* Tenn. Code Ann. § 40-35-311 (2003). Revocation proceedings are informal, as evidenced by relaxed rules regarding the admissibility of evidence, the absence of a jury, and a preponderance of evidence burden of proof. *See* Tenn. Code Ann. § 40-35-311 (c) - (e); *see generally Barker v. State*, 483 S.W.2d 586, 588 (Tenn. 1972). Probationers are not entitled to receive the full range of due process rights. *Barker*, 483 S.W.2d at 589.

Probation revocation provides a procedure to determine whether a probationer should be deprived of his/her liberty for failure to comply with conditions of probation or a breach of the law. *See* Tenn. Code Ann. § 40-35-311(a). "Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty" provided in the terms of probation. *Morrissey*, 408 U.S. at 481, 92 S. Ct. at 2600. Violation of probation suggests an individual is not prepared fully to enter society, so it is vital that "all reliable evidence shedding light on the probationer's conduct be available during probation revocation proceedings." *United States v. Winsett,* 518 F.2d 51, 55 (9th Cir. 1975). Indeed, at the revocation hearing "the trial judge may enter such judgment upon the question of such charges as the trial judge may deem right and proper under the evidence adduced before the trial judge." Tenn. Code Ann. § 40-35-311(d).

The Supreme Court has denied extension of the exclusionary rule to parole revocation proceedings, concluding that "the rule would provide only minimal deterrence benefits in this context, because application of the rule in the criminal trial context already provides significant deterrence of unconstitutional searches." *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 364, 118 S. Ct. 2014, 2020 (1998).[3] The State has an 'overwhelming interest' in ensuring compliance with the conditions of probation. *See Scott*, 524 U.S. at 365, 118 S. Ct. at 2020 (quoting *Morrissey*, 408 U.S. at 477, 92 S. Ct. at 2593). Application of the exclusionary rule to probation revocation proceedings would, at most, discourage only the intentional search of probationers. *Winsett*, 518 F.2d at 54. The exclusion of evidence establishing a violation of probation would decrease the State's power to ensure conformance with probation conditions by preventing a probationer from facing the consequences of disobedience. *Scott*, 524 U.S. at 353, 118 S. Ct. at 2020. It would obstruct the court's ability to gauge a probationer's improvement or regression and

---

[2]While ruling that the seizure of the cocaine was admissible based upon a valid search, the trial court held that even if error, the exclusionary rule was not applicable to revocation proceedings. As such, the court found that the evidence could be considered. The trial court recognized that the question presented was one of first impression in this state.

[3]"Revocation of probation . . . is constitutionally indistinguishable from the revocation of parole." *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 1759-1760 n.3 (1973).

-4-

compel probation officers to spend more time gathering admissible proof concerning those who violate conditions of probation. *Winsett*, 518 F.2d at 55 (citing *United States ex. rel. Sperling v. Fitzpatrick*, 426 F.2d 1161, 1165 (2nd Cir. 1970)). More significantly, it would allow those "who would otherwise be incarcerated to escape the consequences of their actions." *Scott*, 524 U.S. at 364, 118 S. Ct. at 2020. These same effects exist regardless of whether a probationer has consented to searches as a condition of probation.

We are constrained to note, however, that revocation proceedings are not provided carte blanche exemption from all evidence acquired unlawfully. A number of jurisdictions which have employed the principle that the exclusionary rule does not apply at probation revocation proceedings nonetheless afford an exception that suppression of the evidence is permitted when unlawfully obtained evidence results from police harassment or if evidence is obtained in a particularly offensive manner. *See, e.g., Winsett*, 518 F.2d at 55; *United States v. Farmer*, 512 F.2d 160, 162 (6th Cir. 1975); *United States v. Brown*, 488 F.2d 94, 95 (5th Cir. 1973); *Illinois v. Holliday*, 743 N.E.2d 587, 593 (Ill. App. 3d 2001); *Dulin v. State*, 346 N.E.2d 746, 751 (Ind. Ct. App. 1976). Generally harassment requires more than mere evidence that the police knew the accused was on probation at the time of the encounter. *Holliday*, 743 N.E.2d at 593-94. We adhere, however, to the admonitions in *Winsett*:

> [W]hen the police at the moment of search know that a suspect is a probationer, they may have a significant incentive to carry out an illegal search even though knowing that evidence would be inadmissible in any criminal proceeding. The police have nothing to risk: If the motion to suppress in the criminal proceedings were denied, defendant would stand convicted of a new crime; and if the motion were granted, the defendant would still find himself behind bars due to revocation of probation. Thus, in such circumstances, extension of the exclusionary rule to the probation revocation proceeding may be necessary to effectuate Fourth Amendment safeguards.

*Winsett*, 518 F.2d at 54 n.5.

We conclude that exclusion of evidence in a revocation hearing that is obtained as a result of police harassment or obtained in a particularly offensive manner is consistent with our statute which permits the trial judge to enter judgment "as the trial judge may deem right and proper" under the evidence presented. *See* Tenn. Code Ann. § 40-35-311(d). The record in this case does not establish that the officer was informed that the Appellant was a probationer, only that he had prior convictions. In the absence of any evidence of police harassment or that the evidence was obtained in a particularly offensive manner, we conclude that the exclusionary rule is not applicable in this case.

## CONCLUSION

Based upon the foregoing, we affirm the Davidson County Criminal Court's revocation of the Appellant's probation and reinstatement of the judgment as originally imposed.

_____

DAVID G. HAYES, JUDGE