IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 27, 2022 Session

## STATE OF TENNESSEE v. CHARLES LAWSON

**Appeal from the Criminal Court for Greene County**
**Nos. 16CR669, 17CR276, 17CR402, 17CR404, 17CR405   John F. Dugger, Jr., Judge**

_____

**No. E2021-00664-CCA-R3-CD**
_____

The Defendant, Charles Lawson, entered guilty pleas to unlawful possession of a weapon, evading arrest, attempted child abuse or neglect, felony escape, evading arrest in a motor vehicle, and theft of property valued $10,000 or more, and he received an effective ten-year sentence, which he was to serve on probation.  The Defendant was charged with new criminal offenses, and he entered into an agreement with the prosecution resolving both the new charges and the violation of probation.  The trial court rejected the plea agreement.  After a hearing, the court determined that the Defendant violated probation and ordered the sentences in the probation violation case to be served in confinement.  The Defendant appeals, asserting that the trial court erroneously believed that the prosecution had no authority to make a plea offer for a violation of probation, that his due process rights were violated because the court relied on evidence outside the proceedings and interjected itself into the plea process, and that the sentences imposed were illegal.  We conclude that the Defendant's claims regarding the rejection of the plea agreement by the trial court are waived, that his due process rights were not violated during the hearing addressing revocation, and that the judgments, which reflect a thirty-five percent release eligibility date, are not rendered illegal by any error in the mittimus.  Accordingly, we affirm the trial court's judgments.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Brennan M. Wingerter (on appeal), Assistant Public Defender – Appellate Division; Greg W. Eichelman, District Public Defender; and Heather Smith (at hearing), Assistant District Public Defender, for the appellant, Charles Lawson.

Herbert H. Slatery III, Attorney General and Reporter; Davey Douglas, Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Bradley Mercer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

On May 17, 2019, the Defendant entered guilty pleas to the offenses at issue, and he received four-year sentences for unlawful possession of a weapon, evading arrest, felony escape, and evading arrest in a motor vehicle. The Defendant received an eleven month and twenty-nine day sentence for misdemeanor attempted child abuse or neglect, and he received a six-year sentence for theft of property valued at $10,000 or more. The judgment forms indicate that, while he was a standard offender, he agreed to a 35% release eligibility date for each felony offense. The six-year sentence for theft of property and the four-year sentence for felony escape were to be served consecutively, and the sentences were otherwise concurrent, for an effective ten-year sentence. The judgment forms indicated that the Defendant received pretrial jail credit and that the sentences were to be served on supervised probation.

On October 16, 2020, a warrant was issued for violation of probation, and the affidavit recited that the Defendant had failed to obey the laws of the State when, on or around September 28, 2020, he committed the offenses of reckless endangerment, resisting arrest, felony evading arrest, driving on a revoked license, possession of drug paraphernalia, littering, speeding, violation of the financial responsibility law, and failure to maintain lane. The affidavit also alleged that the Defendant "failed to complete Oxford House as instructed."

The probation violation report elaborated that the Defendant entered the pleas on May 17, 2019, and that he was placed on probation effective August 3, 2020, after having served 702 days. After passing an initial drug test on August 4, 2020, he was arrested in another county for violation of probation there and returned to probation in that county. He was then arrested for the offenses alleged in the warrant when an officer attempted to initiate a traffic stop on a vehicle the Defendant was driving and the Defendant failed to stop, threw items out of the window, and subsequently fled on foot.

The record contains a document entitled "Statement of Recommendation" which is addressed to the Greene County Sessions Court Judge and dated November 4, 2020. Following the line "PLEA OFFER FROM ASST. DISTRICT ATTORNEY," the document states, "B/O in exchange to an agreement to P/G to case & Criminal Ct VOP

w/Rehab offer for both." The document identifies case number 20CR1897, which matches the warrant for the new charges as identified in the probation violation report, and it bears a signature next to the "plea offer" line and is signed at the bottom by the Defendant and his attorney.

During the first hearing on the matter, the trial court asked whether the Defendant stipulated to the violation based on the new charges, and defense counsel answered, "He does, Your Honor. We are requesting to go to treatment. He doesn't have a bed yet. I know probation has an issue with that but I have passed up a document signed by the charging officer on the new charges." The Defendant's probation officer then interjected, "And Judge, it's my understanding that the sheriff — I was told by —" The trial court invited the probation officer to "[c]ome around" in order to be heard, and she stated, "I was told by Roger Willett[1] that they are in opposition of him going to any kind of treatment." Defense counsel argued that the sheriff and "Administrator Willett" were not a party to the proceedings. When the Defendant's probation officer again tried to convey a statement from Mr. Willett, the court interrupted and stated it would defer the matter, noting that the Defendant did not yet have the treatment he was requesting set up. The court noted it would give the prosecution "an opportunity to consult" the sheriff. The court stated, "The [S]tate has got an opportunity -- the [S]tate is a part – [the prosecutor] will have to talk to Mr. Willett." Noting the court needed "input," the trial court reiterated to the Defendant that the State "has an opportunity -- you're asking for certain things and the [S]tate has an opportunity to talk to the sheriff's department." The proceedings were continued.

At the next hearing, the trial court asked if there was a plea on the case, and defense counsel responded in the affirmative. The court replied, "Okay. The attorney general can't make agreements on a violation of probation." Defense counsel produced the statement of recommendation signed on November 4, 2020, and it was entered into the record. The court addressed the Defendant, telling him,

> [T]here's some issues been going on in the courtroom about your case. There's officers here from Greene County. You have some kind of recommendation from the attorney general in sessions that you go to treatment but the problem is that you've got violations of probation and the sheriff's department wants you to serve your violation of probation and they're objecting to anything to do about treatment at this time. So is that going to change anything with your plea today?

---

[1] The parties agree that Mr. Willet is presumably a jail administrator.

- 3 -

The Defendant responded in the negative and began to ask a question, but the court stated that it planned to defer the case to allow the Defendant to consult with his lawyer "because it's very important to you about what you thought was going to happen and what may happen."

Prior to adjournment, the Defendant told the court that he had entered into a plea agreement with the prosecutor, and the court responded, "He made a recommendation but he can't determine -- the attorney general can't make a plea agreement on what happens on a violation of probation. That's up to the Court, okay?" The court noted it did not have to accept a guilty plea and reiterated that the sheriff's department was objecting to the agreement. The court distinguished the plea offer on the Defendant's new charges from the violation of probation matter: "Now, the plea -- the plea on this case, four years, suspended to time served. They agree to that but you've still got a VOP, see? And that's separate." The Defendant objected that the plea agreement was global and encompassed the probation violation as well as the new charges, and the court stated, "But you don't understand. The Court determines violations of probation, not the attorney general, okay?" The court again noted it was deferring the matter to allow the Defendant to consult his attorney, reiterating, "The sheriff's department is objecting." The court concluded that "on the violation of probation, the attorney general can't cut some deal on a violation of probation. It's totally up to the Court. And the sheriff's department is objecting."

At the final hearing on the matter, the trial court began by addressing the Defendant's new charges, stating that the Defendant had "bound it over thinking that he had a deal to go to rehab. He thought it was on the front end. The attorney general gets up and says, Well, we agreed to it on the back end." Defense counsel stated that the Defendant wanted to proceed with the probation violation and would respond to a revised proposed plea offer for the new charges after the probation violation matter was concluded. The Defendant was sworn in to give testimony, and the Defendant's probation officer volunteered that this was the Defendant's second violation. The court noted that the Defendant was charged with new offenses and that he failed to complete treatment. The Defendant agreed that he was discharged from his treatment program, asserting that the program was "infested" with drugs. He acknowledged that his probation officer gave him seventy-two hours to gain admission to a different program, and he testified that he gained admission to the other program but was arrested on the new charges before he could attend the program.

The trial court observed that "the biggest thing here is you've got a bunch of serious charges." The court read the charges and noted, "There's a bunch." It informed the Defendant that one new charge was sufficient to constitute a violation of probation, and observed that the Defendant had multiple charges. The Defendant agreed, and he

acknowledged that he understood the new offenses violated his probation. The court found the Defendant in violation of his probation, and it stated that the "sentence is reinstated." The court's reasoning was that it did not want "to reward [the Defendant] for getting all these crimes." The court reiterated, "I'm not going to reward you." Defense counsel noted that the Defendant had "a new offer from the [S]tate that would be three years at 30 percent suspended to time served on the new case," and the court agreed to hear the matter later that week.

The judge signed an order on May 19, 2021, reflecting, "Probation violated, sentence reinstated." The record contains a mittimus issued by the court clerk on the same day for "VOP," which shows an "R.E.D. 100%" and states "sentence reinstated." The Defendant appeals.

## ANALYSIS

On appeal, the Defendant asserts that the trial court violated his due process rights by interjecting itself into the plea bargaining process, that the trial court abused its discretion in rejecting the plea offer based on the erroneous belief that the prosecutor had no authority to offer a plea agreement, that the trial court violated his due process rights by relying on hearsay statements from a witness in rejecting the plea and in determining the revocation, and that the trial court illegally imposed a one hundred percent release eligibility date. The Defendant requests reversal of the revocation and a remand "requir[ing] the trial court to consider the plea agreement offered by the District Attorney General's Office." The State disagrees with the Defendant's interpretation of the trial court's rationale for rejecting the plea, argues that any due process violation was waived or "moot" because the Defendant acknowledged the probation violation, and argues that the mittimus is void to the extent that it varies from the judgments.

We note initially that, although the parties conflate the first two issues to some extent, the Defendant raises three discrete challenges: a challenge to the trial court's rejection of the plea agreement, a challenge to evidence used in the determination to revoke the Defendant's probation and order the sentence into execution, and a challenge to the mittimus, which was issued after the trial court's order. We conclude that the Defendant has waived any objection to the rejection of the plea agreement, that he is not entitled to relief based on the evidence introduced at the revocation hearing, and that any error in the mittimus does not affect the validity of the judgments.

## I. Rejection of the Plea Agreement

The Defendant asserts that the trial court, in rejecting the plea, instructed the prosecutor to consult the sheriff's department in violation of his due process rights and

Rule 11 of the Tennessee Rules of Criminal Procedure. He argues that the prosecutor has the discretion to make a plea agreement regarding a probation violation, that the court erroneously concluded that the prosecutor had no authority to make a plea offer, and that the court erred in considering unsworn evidence. The State does not dispute that the prosecutor had the authority to make a plea offer. Instead, the State disputes the Defendant's interpretation of the court's ruling, asserting that the court properly considered and rejected the offer under Rule 11. The Defendant responds that the court's actions were not in compliance with Rule 11 because it did not allow the Defendant the opportunity to withdraw his pleas after rejecting the agreement. He requests this court to remand the case and to require the trial court to reconsider the proposed plea agreement.

The Defendant argues that he was denied his due process right to a neutral factfinder because the trial court usurped the prosecutor's role by involving itself in the plea bargain. *See Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (noting that a probationer's due process rights require a neutral and detached hearing body). The Defendant interprets the trial court's statements as a requirement that the prosecutor consult the sheriff during the plea negotiation process. We disagree with the Defendant's characterization of the trial court's statements to the prosecutor regarding the sheriff's department. After the Defendant first raised the prospect that "probation" had "an issue" with rehabilitative treatment, the trial court, observing that there was an objection from the sheriff's department and that the Defendant had not yet arranged for admission to the requested treatment program, elected to continue the proceedings. The court reiterated three times that it was giving the prosecution "an opportunity" to consult with the sheriff — never indicating that it was requiring such a consultation — and it noted that the Defendant was asking to "get in treatment" but did not "even have it set up yet." The court's statement that the prosecutor "will have to talk to Mr. Willett" was made in the same sentence where it noted the State had "an opportunity" to consult the sheriff's department. We conclude that there was no abuse of discretion in the trial court's granting a continuance sua sponte when it appeared that both parties would benefit from a continuance in order to secure additional evidence. *State v. Gregory*, 946 S.W.2d 829, 830-31 (Tenn. Crim. App. 1997) (holding that the trial court did not err in sua sponte continuing the proceedings in order to allow the State to subpoena the proper witnesses to confirm laboratory tests).

The trial court ultimately rejected the plea. The decision to accept or reject a plea agreement lies within the trial court's discretion. *State v. Hawkins*, 519 S.W.3d 1, 40 (Tenn. 2017); *see* Tenn. R. Crim. P. 11(c)(3), (4), (5). A trial court abuses its discretion when it applies an incorrect legal standard or reaches a conclusion that is illogical or unreasonable and causes an injustice to the complaining party. *Hawkins*, 519 S.W.3d at 40. In considering the plea, the court must determine if the plea agreement is helpful in the administration of justice and is in the best interest of the public. *State v. Williams*,

851 S.W.2d 828, 831 (Tenn. Crim. App. 1992). "The court is not obligated to accept any agreement, but if the agreement is to a specific sentence, the court must give the defendant an opportunity to withdraw the plea if the agreement is not accepted." *VanArsdall v. State*, 919 S.W.2d 626, 629 (Tenn. Crim. App. 1995); *see* Tenn. R. Crim. P. 11(c). The trial court is taxed with the ultimate decision to accept or reject a plea bargain, and a plea agreement has no force prior to its acceptance by the court. *State v. Turner*, 713 S.W.2d 327, 329 (Tenn. Crim. App. 1986). The discretion of the trial court in rejecting a plea agreement is not absolute, however. *Williams*, 851 S.W.2d at 832. A trial court's discretion must be guided by sound legal principles. *Hawkins*, 519 S.W.3d at 40. "That there is discretion at all implies that there are limits to its exercise. It must not be arbitrary." *Williams*, 851 S.W.2d at 832. For example, blanket policy of rejecting plea agreements in which the defendant does not acknowledge guilt may be an abuse of discretion. *Id.* Rejection of a plea agreement based on an error of law is also an abuse of discretion. *Goosby v. State*, 917 S.W.2d 700, 706-07 (Tenn. Crim. App. 1995) (the trial court abused its discretion when it rejected the plea agreement based on a mistaken belief that it could not sever the defendant and codefendant's trial).

The trial court based its rejection of the plea in part on the sheriff's department's opposition to rehabilitative treatment. At the first hearing, the Defendant's probation officer made unsworn hearsay statements that the sheriff's department opposed a rehabilitative sentence. The trial court at that point did not make a determination regarding the plea but continued the matter to allow both parties an opportunity to gather additional evidence. At the second hearing, the trial court noted, "There's officers here from Greene County." The court referenced the prosecutor's "recommendation" but stated, "[T]he problem is that you've got violations of probation and the sheriff's department wants you to serve your violation of probation and they're objecting to anything to do about treatment at this time." The court referenced the sheriff's department's objection three more times during the hearing.

We conclude that the Defendant's claim that the trial court erroneously considered hearsay evidence regarding the sheriff's objection in rejecting the plea is waived for failure to cite proper authority and failure to object. *See* Tenn. Ct. Crim. App. R. 10(b). While the Defendant argued extensively and thoroughly in his brief that the trial court could not rely on hearsay in revoking his probation, the trial court was not making a revocation decision at the time that it rejected the plea agreement. The Defendant cites to no authority prohibiting a trial court from relying on hearsay in rejecting a plea agreement. *Compare State v. Herman Louis Savage*, No. 26, 1985 WL 4572, at *1 (Tenn. Crim. App. Dec. 18, 1985) (the trial court "consulted" the victims and considered their "statements" in rejecting the plea); *with State v. Harris*, 978 S.W.2d 109, 112 (Tenn. Crim. App. 1997) (the trial court relied on victim testimony in rejecting the plea and there was accordingly substantial evidence supporting the decision). While the Defendant

objected to the fact that the sheriff's office was not a "party" during the first hearing, the trial court did not reject the plea agreement at the first hearing, but merely continued the matter. The Defendant did not renew the objection during the second hearing, where it appears that officers from Greene County were present and could have given pertinent testimony had the Defendant alleged error. We conclude that the Defendant's claim that the trial court considered improper evidence in rejecting the plea is waived.

The trial court also based its rejection of the plea agreement in part on its assertion that "the attorney general can't cut some deal on a violation of probation." The State interprets this and similar statements as merely a rejection of a plea agreement under Tennessee Rule of Criminal Procedure 11(c), while the Defendant interprets the statements as a rejection of the prosecutor's authority to make a plea agreement regarding any probation violation. Both parties agree that the prosecutor had authority to make a plea offer for a violation of probation, this issue was not briefed, and we pretermit it as unnecessary to the resolution of the case. *Sheila Faye Smith and Diane Kinsey v. Peninsula Hosp., Inc.*, No. 03A01-9510-CH-00372, 1996 WL 308307, at *2 (Tenn. Ct. App. June 10, 1996) ("The issue of whether the common law claim of retaliatory discharge is preempted by the Human Rights Commission Act is not briefed by the appellants, and we therefore pretermit it.").

We emphasize here that the plea was a global plea offer resolving both the violation of probation and the new criminal charges. The "Statement of Recommendation" included a "PLEA OFFER FROM ASST. DISTRICT ATTORNEY," and written in the blanks below this was: "B/O in exchange to an agreement to P/G to case & Criminal Ct VOP w/Rehab offer for both." It appears that the offer required the Defendant to be bound over and to plead guilty to both the new charges and the violation of probation in exchange for a "Rehab offer" for both. We note that the form itself is unclear whether the offer was that the prosecutor, in exchange for a guilty plea to the new charges under Rule 11 and an agreement to acknowledge the violation of probation, would merely recommend a sentence of rehabilitation or if the agreement was for a specified sentence. *See* Tenn. R. Crim. P. 11(c)(1)(B), (c)(1)(C); *see also State v. Michael Mullins*, No. E2015-00270-CCA-R3-CD, 2016 WL 1384789, at *11-12 (Tenn. Crim. App. Apr. 6, 2016) (holding that the defendant was not entitled to specific performance or the opportunity to withdraw the plea to the probation violation when the existence of and terms of the agreement were unclear from the record).

Ultimately, any challenge to the rejection of the plea agreement was waived by the proceedings which followed the trial court's rejection of the plea. After the trial court rejected the agreement, it continued the proceedings to give the Defendant an opportunity to consult with his attorney. We agree with the State that the trial court did not accept any guilty pleas prior to rejecting the plea agreement and that it continued the proceedings in

order to give the Defendant an opportunity to reconsider whether or not he wanted to plead guilty to the new charges, in accordance with Tennessee Rule of Criminal Procedure 11(c)(5)(B). The Defendant did not ask for any sort of interlocutory appeal. Because the global plea offer had been rejected, the Defendant elected to proceed separately with the new criminal charges and the probation violation. At the probation violation hearing, the Defendant acknowledged the violation and gave some testimony regarding the circumstances of his inability to complete the Oxford House program. After the court revoked the Defendant's probation and reinstated the sentence, defense counsel noted that the Defendant had received "a new offer from the [S]tate that would be three years at 30 percent suspended to time served on the new case." The parties arranged to hold a hearing on the new plea agreement resolving the Defendant's new charges later that week. At oral argument, appellate counsel stated that he believed the Defendant was in jail awaiting trial on the new charges. To sum up, there is nothing in the record to show the ultimate disposition of the new charges which were part of the global plea offer. The Defendant requests us to vacate the revocation and "require" the trial court to reconsider the rejected plea agreement. This ignores the fact that the rejected offer was a global plea agreement and that the record is silent regarding the ultimate resolution of the Defendant's new charges, other than the intimation that the Defendant pled guilty pursuant to a different plea agreement shortly after the revocation of probation in the instant offenses.

In *State v. Hammons*, the trial court rejected a plea agreement based on what appeared to be an erroneous understanding of the law. *State v. Hammons*, 737 S.W.2d 549, 551-52 (Tenn. Crim. App. 1987) (noting that the plea was apparently rejected based on the belief that a Range II sentence could not be imposed pursuant to a plea agreement without prior notice, although the intermediate court had upheld such a sentence). This court found that the appeal of the error was waived for several reasons, including the fact that "[t]he appellant … waived this issue by subsequently pleading guilty to the offenses." *Id.* at 552. Here, we likewise conclude that the Defendant, by proceeding separately with his new charges and his probation violation and by failing to prepare a record reflecting the disposition of all charges, has precluded any claim to having the global plea offer resolving both cases reinstated. We conclude that the issue regarding the trial court's rejection of the plea agreement is waived.

## II. Evidence at Revocation

The Defendant asserts that his due process rights were violated when the trial court denied his right to confront witnesses by relying on the probation officer's unsworn statement that she "was told" that the sheriff's department opposed a sentence of rehabilitation. The Defendant requests a new hearing in front of a different judge. The State argues that these claims are waived for failure to raise them below and that the

Defendant's acknowledgement that he violated his probation renders any due process violation "moot."[2]  The Defendant responds that his attorney objected at the first hearing that the sheriff's department was "not a party to" the proceedings, that this court has previously elected to review such issues despite waiver, and that the issue is not moot because the Defendant should have had the opportunity to withdraw his admission of guilt when the plea agreement was not honored.  We conclude that, because the record reflects that the trial court's revocation decisions were based exclusively on evidence properly introduced at the third hearing, the Defendant is not entitled to relief.

When a trial court revokes a defendant's probationary sentence, "the standard of review is abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022).  Probation revocation involves a two-step analysis in which the trial court must determine whether a defendant violated the conditions of probation and must then determine the appropriate consequences for a violation.  *Id.* at 757.  A revocation involves two separate discretionary decisions:  the decision to revoke the probation based on finding a violation and a separate sentencing decision in which the court can determine the consequences of the revocation.  *Id.*  At the time of the revocation hearing, the statutory provisions regarding probation allowed the trial court to "(1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period by up to two years; or (4) return the defendant to probation on appropriate modified conditions."  *Id.* at 756 (citing *State v. Beard*, 189 S.W.3d 730, 735 & n.2 (Tenn. Crim. App. 2005)).

A probation revocation is not part of the original criminal prosecution; instead, it is "remedial rather than punitive."  *State v. Hayes*, 190 S.W.3d 665, 669 (Tenn. Crim. App. 2005).  A violation of probationary terms does not constitute a crime but is merely "'mechanism which may trigger the revocation of a previously granted probation.'"  *State v. Jackson*, 60 S.W.3d 738, 743 (Tenn. 2001) (quoting *State v. Painter*, 394 N.W.2d 292, 294 (Neb. 1986)).  Generally, "a probation revocation hearing is not a 'trial.'"  *State v. Thomas Coggins*, No. M2008-00104-CCA-R3-CD, 2009 WL 482491, at *4 (Tenn. Crim. App. Feb. 25, 2009).  "'Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty' provided in the terms of probation."  *Hayes*, 190 S.W.3d at 669 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  Accordingly, in determining revocation, the defendant is subject to "relaxed

---

[2] "A moot case is one that has lost its justiciability either by court decision, acts of the parties, or some other reason occurring after commencement of the case." *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 204 (Tenn. 2009).  "A case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party." *Id.*

- 10 -

rules" regarding evidence; the defendant is not entitled to a jury; and the defendant's probation may be revoked on proof by a preponderance of the evidence. *Id.* Because the revocation deprives the accused of only a conditional liberty granted as part of probation, "[p]robationers are not entitled to receive the full range of due process rights." *Id.* "[T]he trial court at a probation revocation hearing may consider documentary evidence that does not meet usual evidentiary requirements." *State v. Walker*, 307 S.W.3d 260, 265 (Tenn. Crim. App. 2009); *see State v. Moss*, 13 S.W.3d 374, 385 (Tenn. Crim. App. 1999) ("The United States Constitution does not restrict a sentencing judge to consideration of information received in open court."). A probationer has no right to confrontation at a revocation hearing. *Walker*, 307 S.W.3d at 264-65.

However, because a probationer's "conditional freedom from incarceration" is at risk, the accused is entitled to due process at the revocation hearing. *State v. Wade*, 863 S.W.2d 406, 408 (Tenn. 1993); *see Hayes*, 190 S.W.3d at 670-71 (while the exclusionary rule does not apply to revocation proceedings, the exclusion of evidence obtained as a result of harassment or in a particularly offensive manner is required). Accordingly, "a due process standard applies in determining the admissibility of a statement made by an out-of-court declarant at a probation violation proceeding." *Walker*, 307 S.W.3d at 265. This includes "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Scarpelli*, 411 U.S. at 786; *Wade*, 863 S.W.2d at 408. This guarantee "'clearly establishes that some right to confrontation exists, but the qualifying "good cause" language reflects the flexibility that marks these proceedings and suggests that the confrontation requirement will be relaxed in certain circumstances.'" *State v. Steven Todd Andes*, No. E2012-01676-CCA-R3-CD, 2013 WL 3023824, at *4 (Tenn. Crim. App. June 14, 2013) (quoting *Wade*, 863 S.W.2d at 408). Generally, "a defendant may not be subjected to a revocation upon evidence he had no opportunity to hear, test by cross-examination or refute by contrary evidence." *State v. Michael Carnell Jones*, No. E2004-02919-CCA-R3-CD, 2005 WL 2572390, at *4 (Tenn. Crim. App. Oct. 13, 2005). Due process further requires a showing that the hearsay evidence is reliable. *Wade*, 863 S.W.2d at 409 (reversing revocation when the court did not make a finding that there was good cause to rely on an unidentified laboratory report and when there was no proof that the report was reliable).

We agree with the Defendant that he objected at the first hearing to consideration of the probation officer's evidence regarding opposition to the plea agreement from the sheriff's department. When the probation officer interjected with the alleged objection from the sheriff's department, defense counsel argued that the sheriff and "Administrator Willett" were not parties to the proceedings. At the second hearing, the State presented no evidence regarding the sheriff's department's objections, but the trial court observed that officers from Greene County were present and stated multiple times that the sheriff's

department was objecting. The court concluded during the second hearing that it would not accept the plea agreement. The third hearing was devoted to establishing that the Defendant violated the terms of his probation and a determination of the consequence of the violation. The Defendant did not raise any evidentiary objections during the second and third hearings.

The trial court did not consider whether the Defendant violated his probation or what the consequences of the violation should be until the third hearing. The parties dispute whether the probation officer was sworn at this hearing, where the transcript indicated only, "Witnesses sworn by the Court." We conclude that the evidence which the trial court considered in determining the violation and its consequences did not violate the Defendant's constitutional rights.

In general, this court has upheld revocations when the trial court relied on hearsay but the Defendant admitted the probation violations. In *Steven Todd Andes*, the record did not reveal whether the probation officer was present, but this court concluded that the defendant's right to confrontation was not violated when he admitted the violations and did not object to the officer's failure to testify. *Steven Todd Andes*, 2013 WL 3023824, at *5; *see Michael Carnell Jones*, 2005 WL 2572390, at *4 (upholding the revocation when the record did not support a finding of good cause to support the denial of confrontation but the proof was reliable and the defendant admitted the violations); *State v. Stephen E. Cline*, No. M2000-01674-CCA-R3-CD, 2001 WL 1379877, at *4 (Tenn. Crim. App. Oct. 30, 2001) (determining that violation of defendant's due process right to confront witnesses was harmless beyond a reasonable doubt when there was no finding of good cause or showing of reliability but when other evidence supported the revocation). On the other hand, this court has found a due process violation when a contested issue was established by hearsay. *State v. Joyce Newman*, No. M1999-00161-CCA-R3-CD, 2000 WL 994358, at *4-5 (Tenn. Crim. App. July 12, 2000) (concluding that the defendant's rights were violated by hearsay testimony of probation officer when there was no showing of good cause for the absence of the curfew monitors, no showing of reliability, and the issue of the defendant's presence in the home was contested).

Here, the Defendant conceded that he violated his probation. Because it was undisputed that the Defendant violated the terms of his probation, any due process error in determining the violation itself would be harmless beyond a reasonable doubt. *See Stephen E. Cline*, 2001 WL 1379877, at *4 (analyzing admission of hearsay admitted in violation of the defendant's due process right in a revocation hearing to determine if the error was harmless beyond a reasonable doubt); *cf. State v. Parker*, 350 S.W.3d 883, 902 (Tenn. 2011) (confrontation violation is reviewed for constitutional harmless error).

However, the Defendant asserts that the trial court relied on impermissible testimony in deciding the consequences of the violation. *See Dagnan*, 641 S.W.3d at 757 (recognizing that a probation revocation is a two-step consideration in which the trial court must make separate determinations regarding whether a violation has taken place and what consequences should attend a violation). The Defendant avers that the trial court was "basing its decision to deny rehab on the sheriff's purported objection."

After determining that it would reject the plea agreement, the trial court continued the matter to allow the Defendant to consult his attorney. While the first two hearings addressed the plea agreement, the third hearing addressed exclusively the purported violation and its consequences. The Defendant's probation officer's contributions to the third hearing were to note that this was a second violation of probation, to state that there was only one single warrant, and to confirm the Defendant's statement that he never completed treatment after he was transferred to another program. The parties dispute whether the probation officer was sworn at this hearing, where the transcript indicated only, "Witnesses sworn by the Court." We note that the Defendant never objected to the failure to swear in the officer at the revocation hearing, that he has not provided a record from which we can determine that the officer was not sworn, and that he did not contest any of the officer's statements during the third hearing. Accordingly, the Defendant is not entitled to relief based on the officer's statements at the third hearing. *Steven Todd Andes*, 2013 WL 3023824, at *5 (concluding that the defendant was not entitled to relief when he did not object to the probation officer's failure to testify, it was unclear from the record if the officer was present, and the defendant admitted the violations).

The Defendant argues that the trial court impermissibly relied on the purported disapproval of the sheriff, introduced through hearsay statements in the first and second hearings, in determining the consequences of the probation violation. However, it appears that, in its decisions regarding revocation, the trial court did not rely on the probation officer's statements regarding any purported position taken by the sheriff's office. While the court referred to the sheriff's objection in rejecting the plea during the first and second hearings, it never referenced the objection during the revocation hearing. Instead, the court placed emphasis on the Defendant's new offenses, stating that "the biggest thing here is you've got a bunch of serious charges. You've got a whole list of charges." The court read the charges, which it described as "a bunch." The court observed that a single new offense could serve as a violation and that the Defendant was charged with multiple offenses. The Defendant acknowledged that he failed to complete treatment and that the new offenses violated his probation. Having determined that the probation was violated, the trial court's *only* stated basis for ordering the sentences reinstated was that the court did not intend "to reward" the Defendant for the multiplicity of the new offenses. The court reiterated the statement regarding not rewarding the Defendant. Accordingly, we conclude that any hearsay evidence introduced during the

- 13 -

court's consideration of the plea agreement was harmless beyond a reasonable doubt in the revocation determinations because the court did not consider it in the determination of the consequences of revocation. Instead, the record reflects that the Defendant was charged with nine new offenses and that the trial court relied exclusively on the multiplicity of the Defendant's new offenses in reinstating the sentences.

The Defendant also asserts that he was denied the right to a neutral and detached factfinder by the trial court's reliance on the unsworn statements. Due process guarantees a probationer a "'neutral and detached' hearing body" in a revocation determination. *Scarpelli*, 411 U.S. at 786; *Wade*, 863 S.W.2d at 408. As noted above, the record demonstrates that the trial court did not, in fact, rely on any of the statements to which the Defendant objects in revoking the Defendant's probation and reinstating his sentence. The Defendant is not entitled to relief.

### III. Mittimus

The Defendant's principal brief asserts that the trial court abused its discretion by increasing the Defendant's release eligibility from the thirty-five percent specified in the original judgments to one hundred percent, as reflected in the mittimus. The State argues that the mittimus issued by the clerk does not affect the Defendant's sentence and is void to the extent that it deviates from the judgment. The Defendant responds that the trial court erred in altering the judgment by entering the mittimus, creating an illegal sentence. We agree with the State that the judgments correctly reflect the Defendant's release eligibility as thirty-five percent and that the mittimus is void to the extent that it is in conflict with the judgments.

The trial court, on finding that the Defendant violated his probation by committing new offenses, had the authority to revoke the probation and "[c]ause the defendant to commence the execution of the judgment as originally entered." T.C.A. § 40-35-311(e)(1)(A) (2021). The trial court stated on the record that the sentences would be "reinstated," and the May 19, 2021, order signed by the court likewise reflected, "sentence reinstated." The judgment forms reflect a thirty-five percent release eligibility date, and they indicate that the Defendant's guilty plea included an agreement that his release eligibility would be thirty-five percent. The clerk, however, issued a mittimus which shows a one hundred percent release eligibility date. We agree with the Defendant that the State's insinuation that the issue may be waived because the electronic copy is not legible is vitiated by the fact that the record contains a legible hard copy available for the perusal of the court – and also of the parties.

"A mittimus is similar to an execution after judgment in a civil case. It is the means by which the judgment of the court is carried out." *Richmond v. Barksdale*, 688

S.W.2d 86, 88 (Tenn. Ct. App. 1984). Statute requires the filing and maintenance of the "mittimus or process by which any prisoner is committed or discharged from jail" or an attested copy thereof. T.C.A. § 41-4-106. A mittimus is an "affidavit[] to the sheriff or jailer as to the defendant's sentence," and is "essentially directory in nature." *Jack P. Carr v. David Mills, Warden*, No. E2000-00156-CCA-R3-PC, 2000 WL 1520267, at *1 (Tenn. Crim. App. Oct. 13, 2000). "The purpose of the mittimus is to tell the sheriff, who was not a party to the suit that produced the judgment, who[m] he is to take into custody, why he is to take him, where he is to take him, and for how long." *Richmond*, 688 S.W.2d at 88. The mittimus, itself, however, does not constitute a judgment. *Clifford L. Taylor v. State*, No. W2003-02198-CCA-R3-PC, 2005 WL 578825, at *3 (Tenn. Crim. App. Mar. 11, 2005); *Jack P. Carr*, 2000 WL 1520267, at *1. It does not require the judge's signature. *Id.*

"The problem with the case before us is that the petitioner is attacking the mittimus rather than the judgment." *Richmond*, 688 S.W.2d at 88. The judgments included in the record reflect the Defendant's agreed-to release eligibility as thirty-five percent. We agree with the State that the record reflects that the trial court did not take any action to alter the Defendant's release eligibility. The court signed an order reflecting that the sentences were reinstated, but the only signature on the mittimus is that of the court clerk. The State is likewise correct that, insofar as the mittimus is in conflict with the judgments, it is void. *Id.* at 89 ("Since the mittimus is a ministerial order, an error in the mittimus that is contrary to the judgment should not vitiate the judgment—i.e., the order of confinement."); *see Marvin Anthony Matthews v. Charles C. Noles*, No. 02 C01-9206-CC-00140, 1993 WL 46546, at *2 (Tenn. Crim. App. Feb. 24, 1993) (holding that the minute entry was a valid judgment and that any technical error in the mittimus did not render the judgment illegal). While the Defendant asserts that the trial court erred in "entering" the mittimus and urges us to correct the error, we observe that any error in the mittimus was not presented to the trial court. Accordingly, we merely remark on appeal that the judgments reflect a release eligibility of thirty-five percent.

## CONCLUSION

Based on the foregoing, we affirm the trial court's judgments.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE