IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2022

**STATE OF TENNESSEE v. JACOB SARKISSIAN**

**Appeal from the Criminal Court for Knox County**
**Nos. 118119  Scott Green, Judge**

_____

**No. E2022-00059-CCA-R3-CD**

_____

The Defendant, Jacob Sarkissian, appeals the trial court's revocation of his three-year probationary sentence for aggravated assault. The trial court revoked the Defendant's probation after determining that he materially violated his probation sentence by testing positive for marijuana, methamphetamine, and amphetamine, and by having contact with the victim. The Defendant asserts that the trial court's revocation of his probation sentence was an abuse of discretion because the trial court improperly relied on allegations of physical abuse that were not alleged in the probation violation warrant. The record supports the trial court's finding that the Defendant violated the terms of his probation sentence and the trial court's decision that the Defendant must serve his sentence in prison. We conclude that no abuse of discretion occurred and affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., P.J., and CAMILLE R. MCMULLEN, J., joined.

Eric M. Lutton, District Public Defender, Jonathan Harwell, Assistant Public Defender (on appeal), and Chelsea A. Harris, Assistant Public Defender (at hearing), Knoxville, Tennessee, for the appellant, Jacob Sarkissian.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Joseph Welker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

On October 28, 2020, the Defendant pleaded guilty to aggravated assault for an agreed-upon sentence of three years, to be served on probation. In relevant part, the

conditions of the Defendant's probation sentence required that he: (1) not violate any laws; and (2) refrain from any contact with the victim, Victoria Grady.

On July 23, 2021, a State probation officer, Mike Hammond, filed an affidavit alleging that the Defendant underwent a drug screen on June 29, 2021, and the results indicated positive for marijuana. Based upon these allegations, the trial court issued a warrant on the same day for the Defendant's arrest. On August 19, 2021, the trial court allowed an amendment to the violation of probation warrant to include that the Defendant tested positive for marijuana on July 20, 2021, and methamphetamine on August 2, 2021, in violation of the terms of his probation. On October 26, 2021, the trial court allowed a second amendment to the probation violation warrant, alleging that the Defendant tested positive for marijuana, methamphetamine, and amphetamine on October 7, 2021. A final amendment was filed on October 28, 2021, alleging that the Defendant had contact with the victim as evidenced by recorded phone calls while the Defendant was in custody at the Knox County Detention Facility.

The trial court held a hearing[1] on November 17, 2021, to determine whether the Defendant had violated the conditions of his probation sentence. At the hearing, the Defendant testified that he had violated the terms and conditions of his probation as alleged within the warrant. Based upon the Defendant's admission and the sworn allegations contained within the violation warrant, the trial court found that the Defendant had materially violated the terms and conditions of probation.

The trial court held a sentencing (sanction) hearing on the probation violation on December 16, 2021. The parties presented the following evidence:

Ms. O'Grady, the victim, testified about her interactions with the Defendant since he had been placed on probation. Ms. O'Grady was aware that the Defendant was not allowed to contact her; however, she cared about the Defendant and wanted him to seek treatment. Ms. O'Grady and the Defendant interacted through text messages, telephone calls, and the Defendant came to her residence "[a] few times." Ms. O'Grady described multiple incidents of violence when the Defendant punched, choked, and "hit [her] head a couple times on the dash of his car." All of these events occurred while Ms. O'Grady was experiencing temporary paralysis from the waist down due to "[a]cute disseminated encephalomyelitis." The Defendant also cursed at and threatened Ms. O'Grady. Ms. O'Grady testified that she observed the Defendant using methamphetamine and marijuana after being placed on probation. Ms. O'Grady either purchased or provided the money for

---

[1] The record reflects that the Defendant appeared via Zoom video conference for this proceeding.

"fake pee" in order for the Defendant to pass his drug screens. Ms. O'Grady confirmed that she spoke with the Defendant by telephone during his incarceration.

Based upon this evidence, the trial court ordered service of the three-year sentence. It is from this judgment that the Defendant appeals.

## II. Analysis

The Defendant asserts that the trial court abused its discretion when it revoked his probation sentence because the trial court based the revocation and consequences for the revocation on matters not included in the probation violation warrant. The State responds that the trial court acted within its discretion when, after determining that the Defendant had violated the terms of his probation, revoked the probation sentence and placed the sentence into effect. We agree with the State.

When a trial court revokes a defendant's probationary sentence, "the standard of review is abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). Probation revocation involves a two-step analysis in which the trial court must determine whether a defendant violated the conditions of probation and must then determine the appropriate consequences for a violation. *Id.* at 757. A revocation involves two separate discretionary decisions: the decision to revoke the probation based on finding a violation and a separate sentencing decision in which the court can determine the consequences of the revocation. *Id.* At the time of the revocation hearing, the statutory provisions regarding probation allowed the trial court to "(1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period by up to two years; or (4) return the defendant to probation on appropriate modified conditions." *Id.* at 756 (citing *State v. Beard*, 189 S.W.3d 730, 735 & n.2 (Tenn. Crim. App. 2005)); T.C.A. § 40-35-308, -310, -311.

A probation revocation is not part of the original criminal prosecution; instead, it is "remedial rather than punitive." *State v. Hayes*, 190 S.W.3d 665, 669 (Tenn. Crim. App. 2005). A violation of probationary terms does not constitute a crime but is merely a "'mechanism which may trigger the revocation of a previously granted probation.'" *State v. Jackson*, 60 S.W.3d 738, 743 (Tenn. 2001) (quoting *State v. Painter*, 394 N.W.2d 292, 294 (Neb. 1986)). Generally, "a probation revocation hearing is not a 'trial.'" *State v. Thomas Coggins*, No. M2008-00104-CCA-R3-CD, 2009 WL 482491, at *4 (Tenn. Crim. App., at Nashville, Feb. 25, 2009). "'Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty' provided in the terms of probation." *Hayes*, 190 S.W.3d at 669 (quoting *Morrissey v. Brewer*, 408 U.S.

3

471, 481 (1972)). Accordingly, in determining revocation, the defendant is subject to "relaxed rules" regarding evidence; the defendant is not entitled to a jury; and the defendant's probation may be revoked on proof by a preponderance of the evidence. *Id.* Because the revocation deprives the accused of only a conditional liberty granted as part of probation, "[p]robationers are not entitled to receive the full range of due process rights." *Id.* "[T]he trial court at a probation revocation hearing may consider documentary evidence that does not meet usual evidentiary requirements." *State v. Walker*, 307 S.W.3d 260, 265 (Tenn. Crim. App. 2009); *see State v. Moss*, 13 S.W.3d 374, 385 (Tenn. Crim. App. 1999) ("The United States Constitution does not restrict a sentencing judge to consideration of information received in open court."). A probationer has no right to confrontation at a revocation hearing. *Walker*, 307 S.W.3d at 264-65.

However, because a probationer's "conditional freedom from incarceration" is at risk, the accused is entitled to due process at the revocation hearing. *State v. Wade*, 863 S.W.2d 406, 408 (Tenn. 1993); *see Hayes*, 190 S.W.3d at 670-71 (while the exclusionary rule does not apply to revocation proceedings, the exclusion of evidence obtained as a result of harassment or in a particularly offensive manner is required). Accordingly, "a due process standard applies in determining the admissibility of a statement made by an out-of-court declarant at a probation violation proceeding." *Walker*, 307 S.W.3d at 265. This includes "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Gagnon v. Scarpelli*, 411 U.S., 778, 786 (1973); *Wade*, 863 S.W.2d at 408. This guarantee "'clearly establishes that some right to confrontation exists, but the qualifying "good cause" language reflects the flexibility that marks these proceedings and suggests that the confrontation requirement will be relaxed in certain circumstances.'" *State v. Steven Todd Andes*, No. E2012-01676-CCA-R3-CD, 2013 WL 3023824, at *4 (Tenn. Crim. App. June 14, 2013) (quoting *Wade*, 863 S.W.2d at 408). Generally, "a defendant may not be subjected to a revocation upon evidence he had no opportunity to hear, test by cross-examination or refute by contrary evidence." *State v. Michael Carnell Jones*, No. E2004-02919-CCA-R3-CD, 2005 WL 2572390, at *4 (Tenn. Crim. App. Oct. 13, 2005). Due process further requires a showing that hearsay evidence is reliable. *Wade*, 863 S.W.2d at 409 (reversing revocation when the court did not make a finding that there was good cause to rely on an unidentified laboratory report and when there was no proof that the report was reliable).

We disagree with the Defendant's characterization of the trial court's revocation of his probation sentence as being based solely on the Defendant's physical assault of the victim while she was paralyzed. The probation violation warrant alleged that the Defendant violated the terms of his probation by using illegal drugs and by having contact with the victim. The Defendant conceded that he violated probation. The trial court, in considering the appropriate consequence, then considered the Defendant's conduct during his probation sentence before fully revoking the Defendant's sentence.

4

There was ample evidence to support the trial court's decision to revoke probation and to order the Defendant to serve his sentence in jail. The probation warrant alleged that the Defendant violated the terms of his sentence by using drugs, based upon multiple failed drug screens. The Defendant admitted to the violation. During the hearing to determine the consequence of the violation, in addition to the Defendant's admission, the victim testified that she observed the Defendant using drugs and that he asked her to buy "clean urine" to submit for his drug testing. Although not alleged in the warrant, this evidence presented during the consequence phase provided the trial court with information relevant to the violation and to the proper consequence to be imposed. The probation violation warrant also alleged that the Defendant had contact with the victim in violation of the terms of his probation. The Defendant also admitted to this violation. At the hearing to determine the consequence for the violation, the victim testified about multiple instances of contact after the probation sentence was in effect, including the phone conversations in jail and in-person contact. Although the in-person contact was not alleged in the warrant, this evidence is relevant to the trial court's determination of the appropriate consequence for the violation. Giving a presumption of reasonableness to the trial court's decision choosing one of the statutory options available to it, we conclude that the trial court did not abuse its discretion in revoking Defendant's probation and ordering the Defendant to serve the sentence in jail.

In our view, it is proper for a trial court to consider the Defendant's behavior while on probation in determining the proper consequence for a probation violation. The breadth and scope of probation violations are relevant as are criminal acts committed after a probation sentence is granted. *See, State v. Fleming*, No. E2017-02352-CCA-R3-CD, 2018 WL 6787580, at *3 (Tenn. Crim. App., at Knoxville, Dec. 26, 2018) (citing State v. *Marcus Nigel Davis*, No. E2007-02882-CCA-R3-CD, 2008 WL 4682238, at *5 (Tenn. Crim. App., at Knoxville, Oct. 23, 2008) (consideration of past criminal acts may be considered in determining "whether the beneficial aspects of probation [are] being served."). We agree with the Defendant that the trial court should not consider violations not alleged in the warrant when considering whether a violation occurred. In this case, however, the Defendant admitted to the violations, accepting the allegations that he engaged in illegal drug use at least three times and had contact with the victim at least once. The Defendant's guilt as to the violations was already established by his own admission.

After determining the Defendant violated the terms of his probation at least four times, the trial court, in the consequence phase, considered additional evidence relevant to the violations to determine whether the Defendant should return to probation, serve a period of the sentence in jail, or serve the entirety of the sentence in jail. We note that, at the hearing to determine the consequence, the Defendant did not object to the victim's testimony and cross-examined the victim. The trial court considered the scope and breadth

5

of the violations to conclude that because the Defendant repeatedly violated both Tennessee law and the terms of his probation sentence, he was not a good candidate for reinstatement to the probation sentence. Thus, we conclude that the trial court did not abuse its discretion when it determined that the Defendant should serve his sentence because he violated the terms of his probation sentence multiple times.

The Defendant repeatedly engaged in illegal drug use during his probation sentence. Additionally, the Defendant had contact with the victim of the crime for which he was granted a probation sentence, exhibiting a pattern of difficulty with compliance. Accordingly, we conclude that the trial court correctly found by a preponderance of the evidence that the Defendant violated the conditions of his probation sentence and then, in its discretion, properly determined the consequence of the violation. Therefore, the Defendant is not entitled to relief.

### III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

6