IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 7, 2026 Session

**STATE OF TENNESSEE v. TOMMY LYNN HOLLINGSWORTH**

**Appeal from the Circuit Court for Henderson County
No. 96-193, 96-195, 96-197, 96-199     Donald H. Allen, Judge**

_____

**No. W2025-00442-CCA-R3-CD**

_____


The defendant, Tommy Lynn Hollingsworth, appeals the order of the trial court revoking his probation and ordering him to serve the remainder of his six-year sentence in confinement. Upon our review of the record, the parties' briefs, and oral arguments, we affirm the judgment of the trial court as to the denial of the defendant's motion to dismiss and the revocation of the defendant's probation. As to the disposition of the defendant's probation, while we affirm the judgment of the trial court to order confinement in case number 96-195, the trial court erred in imposing that disposition in case number 96-193, which had expired.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

J. ROSS DYER, J., delivered the opinion of the court, in which MATTHEW WILSON, J., joined. CAMILLE R. MCMULLEN, J., dissenting.

Joshua V. Lehde, Franklin, Tennessee, for the appellant, Tommy Hollingsworth.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin L. Barker, Assistant Attorney General; Jenny Palmer, District Attorney General; and Eric Wood, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

On October 19, 1998, pursuant to a plea agreement, the defendant pled guilty to two counts of selling a controlled substance in Henderson County.[1] The agreement stipulated

---

[1] The defendant pled guilty in case numbers 96-193 and 96-195.

that the defendant would serve three years for each case, whereby after forty-five days in confinement, the remainder would be suspended to community corrections. The two sentences were to run consecutively for an effective six-year sentence. Additionally, a fine of $2000 was levied for each count to be paid at a rate of $100 per month, in addition to court costs and supervision fees. The defendant was also allowed to transfer his supervision to the state of Illinois after sentencing. Lastly, the defendant agreed to pay the court costs associated with two additional cases in exchange for their dismissal.[2]

Immediately after sentencing, the defendant was assigned to be supervised by Tracye Maness, a state probation officer with the Tennessee Department of Correction. On February 8, 1999, the trial court entered an Order of Transfer to Probation converting the defendant's community correction sentence to probation for the purpose of transferring supervision of the defendant to the state of Illinois. While the defendant was living in Illinois, Ms. Maness "was getting a report [on] how good [the defendant] had done while on supervision" with the exception of a pending charge related to possession of drug paraphernalia.[3]

On October 22, 2001, Ms. Maness received notification from the probation authorities in Champagne County, Illinois, that they were terminating supervision of the defendant because he intended to relocate to Tennessee. Upon the defendant's return to Tennessee, Ms. Maness resumed supervision. On June 10, 2002, the defendant tested positive for marijuana, violating a condition of his probation. After this date, the defendant ceased reporting to Ms. Maness.

On July 8, 2002, a probation revocation warrant was issued for the defendant in Henderson County. The warrant alleged the defendant had tested positive for the use of marijuana, failed to make the required payments of fines, court costs, and supervision fees, and had terminated his employment without permission. At the time the warrant was issued, Ms. Maness did not know the defendant's location.

On January 30, 2007, the defendant was convicted in Illinois of one count of burglary and sentenced to five years in confinement with the Illinois Department of Correction. On March 12, 2007, the defendant was convicted in Illinois of obstruction of justice and sentenced to an additional three years in confinement. This sentence was ordered to run consecutively to his sentence for burglary.

---

[2] The two additional cases were 96-197 and 96-199.
[3] The record is void of documentation related to this charge.

On June 30, 2021, the defendant pled guilty in Texas to one count of possession of a controlled substance. He was sentenced to three years, suspended to community supervision.

On December 26, 2024, the defendant was served with the 2002 revocation warrant from Henderson County, Tennessee, while meeting with his community supervisor in Texas. The defendant filed a motion to dismiss the probation violation on February 25, 2025, on the basis that it violated his right to a speedy trial. A hearing on the defendant's motion and on the probation violation was held on March 28, 2025, during which the following additional facts were established:

During the initial hearing on the defendant's motion to dismiss, the defendant testified that in 2002, when the probation revocation warrant was issued, he no longer resided in Tennessee and had relocated to the state of Illinois. While living in Illinois, the defendant was convicted twice and incarcerated. The defendant testified that his warrant status was searched each time he was arrested for those offenses, but the 2002 revocation warrant was not discovered. In 2016, the defendant moved to Texas, and in 2021, he was arrested and placed on community supervision. On December 26, 2024, the defendant met with his community supervisor in Texas and was notified of the warrant. He was taken into custody and transferred to Tennessee by a third party. The defendant testified that between 2002 and 2024 he was unaware that a revocation warrant had been issued in Henderson County.

The trial court proceeded to hear testimony concerning the alleged violations. Tracye Maness testified that on June 10, 2002, after the defendant had returned to Tennessee and her supervision, the defendant tested positive for marijuana, violating of a condition of his probation. Ms. Maness testified that the defendant "never reported again after that." Ms. Maness noted the efforts she made to re-engage the defendant: "I tried to get in touch with [the defendant] because he wouldn't report after he failed the drug test to get him in for another drug test. I had sent him the stuff to report, and he never reported after that." She mailed correspondence "back in August," but received no response from the defendant. Despite her attempts, "[the defendant] never reported after that." At the time, Ms. Maness was unaware of the defendant's location in Illinois. She stated that if the defendant intended to move back to Illinois, he was required to notify her in order to properly transfer his supervision. However, she neither received notification from the defendant nor did the defendant contact her for any reason after the failed drug test.

Following testimony and argument by counsel, the trial court denied the defendant's motion to dismiss the revocation warrant.

The trial court then turned to the determination of whether the defendant violated his probation, and if so, the disposition of that violation. The trial court found that the defendant violated the terms and conditions of his probation when he tested positive for marijuana on June 10, 2002, quit his employment, and failed to make the required payments of fines, court costs, and supervision fees. Lastly, the trial court concluded the defendant ceased reporting to supervision altogether and, thus, "absconded probation in Tennessee."

The trial court then addressed the next issue: the disposition of the revocation. The trial court found the defendant was not a good candidate for probation because "he's demonstrated he won't report." The trial court also found that the defendant had committed new offenses while the revocation warrant was pending. Ultimately, the trial court revoked the defendant's probation and ordered him to serve the "six-year" sentence in confinement with the Tennessee Department of Correction.

This timely appeal followed.

*Analysis*

On appeal, the defendant argues that his right to a speedy trial was violated and that the trial court abused its discretion in revoking his probation, ordering him to serve the remainder of his sentence in confinement. The defendant also argues the trial court's reliance upon absconsion as a basis for the revocation of his probation violated his right to due process because it was not alleged in the revocation warrant. The State responds that the trial court properly denied the defendant's motion to dismiss and that it acted within its discretion in revoking the defendant's probation. The State further contends that the defendant waived his argument concerning notice and that any reliance by the trial court on an unnoticed ground was harmless error. After review, we agree with the State.

Additionally, the defendant mentioned in a footnote of his principal brief and at oral argument that the trial court's revocation of both three-year probationary sentences was in error. Specifically, the defendant claims that his first three-year probationary term had expired prior to the issuance of the probation violation warrant, thereby depriving the trial court of jurisdiction. On this sole issue, we agree with the defendant.

## I.    Right to a Speedy Trial

Criminal defendants are "entitled to a speedy trial" under both the United States and Tennessee Constitutions and Tennessee statutory authority. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; Tenn. Code Ann. § 40-14-101; *State v. Utley*, 956 S.W.2d 489, 492 (Tenn. 1997). "These guarantees were designed 'to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk

that evidence will be lost or memories diminished.'" *State v. Hudgins*, 188 S.W.3d 663, 667 (Tenn. Crim. App. Aug. 23, 2005) (quoting *State v. Utley*, 956 S.W.2d 489, 492 (Tenn. 1997)).

When the accused has been denied the right to a speedy trial, the appropriate remedy is reversal and dismissal of the charges. *State v. Simmons,* 54 S.W.3d 755, 759 (Tenn. 2001). "A trial court must carefully balance societal interest in punishing criminals against a defendant's interest in a speedy trial, because dismissal of charges is the only available remedy for violation of the right." *State v. Hutchings*, No. M2008-00814-CCA-R3-CD, 2009 WL 1676057, at *4 (Tenn. Crim. App. June 16, 2009) (citing *State v. Bishop*, 493 S.W.2d 81, 83 (Tenn. 1973)).

To determine whether a speedy trial violation has occurred, the trial court must balance the factors outlined in *Barker v. Wingo*, which include: the length of delay, the reasons for delay, the defendant's assertion of the right to a speedy trial, and the prejudice resulting from the delay. *Barker*, 407 U.S. 514, 530-32 (1972); see *Simmons*, 54 S.W.3d at 759 (adopting the *Barker* test in Tennessee). Dismissal is warranted if the trial court finds a defendant has been denied a speedy trial. *Barker*, 407 U.S. at 522. The review of whether a defendant's right to a speedy trial has been violated involves a mixed question of law and fact. *State v. Moon*, 644 S.W.3d 72, 78 (Tenn. 2022). Appellate courts should give deference to the trial court's findings of fact unless the evidence preponderates against them. *Id.* However, the trial court's interpretation and application of the law to the facts is reviewed de novo. *Id.*

Turning to the first *Barker* factor, the length of the delay in the prosecution, we note that this factor presents the "trigger" mechanism for the remaining speedy trial violation analysis. *Utley*, 956 S.W.2d at 494. Without proof that the delay is "presumptively prejudicial" on the part of the defendant, "there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Generally, a delay of one year or longer is sufficient to prove "presumptive prejudice," although the line of demarcation depends on the nature of the case. *Utley*, 956 S.W.2d at 494.

Here, it is undisputed that there was more than a twenty-two-year delay between the issuance of the July 2002 revocation warrant and the March 2025 revocation hearing. It is also undisputed that there was three-month delay between the December 2024 arrest on the revocation warrant and the March 2025 revocation hearing. Therefore, to calculate whether the delay is "presumptively prejudicial," we must determine which event, the issuance of the warrant or the arrest "starts the clock." In the case at bar, this is the threshold determination as to whether a violation of the defendant's right to a speedy trial has occurred.

The defendant argues this Court should follow the holding of *State v. Allen* in which our supreme court held that the right to a speedy trial was triggered at the issuance of a warrant for violation of probation. *Allen*, 505 S.W.2d 715, 717 (Tenn. 1974). The majority of this Court's subsequent opinions have followed this precedent. *See e.g., Hutchings*, 2009 WL 1676057, at \*6 (Tenn. Crim. App. June 16, 2009); *State v. McBrien,* No. W2021-00158-CCA-R3-CD, 2022 WL 1025068, \*2 (Tenn. Crim. App. April 6, 2022); *State v. Herl¸* No. W2020-01671-CCA-R3-CD, 2021 WL 4938138, at \*2-3 (Tenn. Crim. App. Oct. 22, 2021), *no perm. app. filed*; *State v. McKee*, No. W2012-00797-CCA-R3-CD, 2013 WL 12181710, \*2 (Tenn. Crim. App. Mar. 7, 2013), *no perm. app. filed*; *State v. Meadows,* No. W2006-02534-CCA-R3-CD, 2007 WL 1215050, at \*2-3 (Tenn. Crim. App. Apr. 24, 2007), *no. perm. app. filed*; *State v. Matkin*, No. E2005-02701-CCA-R3-CD, 2007 WL 120048, at \*5 (Tenn. Crim. App. Jan. 18, 2007), *perm. app. denied* (Tenn. May 14, 2007); *State v. Broyld*, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at \*1-2 (Tenn. Crim. App. Dec. 27, 2005), *no perm. app. filed*; *State v. Wilson*, No. M2000-01537-CCA-R3-CD, 2001 WL 523368, at \*2 (Tenn. Crim. App. May 16, 2001), *perm. app. denied* (Tenn. Oct. 29, 2001); *State v. Ralph*, No. M1999-01635-CCA-R3-CD, 2000 WL 775592, at \*1-2 (Tenn. Crim. App. Jun. 16, 2000), *perm. app. denied* (Tenn. Dec. 27, 2000).

The State responds that we should follow this Court's more recent holding in *State v. Moon* that a defendant's right to a speedy trial in probation revocation proceedings is triggered once the defendant is arrested for the revocation warrant. *Moon*, No. M2023-01192-CCA-R3-CD, 2025 WL 1672885 (Tenn. Crim. App. June 13, 2025), *perm. app. granted* (Tenn. Dec. 19, 2025)[4]; *See also State v. Goldsberry*, No. W2025-00111-CCA-R3-CD, 2025 WL 3633824 (Tenn. Crim. App. Dec. 15, 2025); *State v. Tillery*, No. E2000-01996CCA-R3-CD, 2001 WL 921754 (Tenn. Crim. App. Aug. 16, 2001).

Upon review of the applicable law, we agree with the State. This Court's holding in *Moon*, while acknowledging that probationers maintain a right to a speedy trial under the Tennessee Constitution, concludes that that right does not attach until the probationer is arrested for the revocation warrant and is "formally accused" of the violation. *Moon*, 2025 WL 1672885, at \*11; *See also Goldsberry*, 2025 WL 3633824, at \*8. In so determining, this Court relied upon our supreme court's decision in *Utley*. 956 S.W.2d at 493. In *Utley*, our supreme court unambiguously determined that "a warrant alone does not trigger speedy trial analysis; to the contrary, a formal grand jury action or the actual restraints of arrest are required." *Id.* The right to a speedy trial was found to attach at these

---

[4] We note that on December 19, 2025, our supreme court granted the application for permission to appeal in order to answer the questions: whether a constitutional right under the Tennessee Constitution to a speedy trial exists in a probation revocation proceeding, when would that right attach, should the supreme court revisit the holding in *Allen v. State*, 505 S.W.2d 715 (1975), and whether a probationer is entitled to any due process protections provided under federal or state constitutions. *State v. Moon*, 2023 WL 3707677 (Tenn. 2025) (order granting permission to appeal).

moments in criminal proceedings because these are when a "formal accusation" of criminal prosecution can be made. *Id.* at 492 (relying upon *United States v. Marion*, 404 U.S. 307, 320 (1971) ("[i]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provisions of the Sixth Amendment)). Given that Tennessee's constitutional provision of a speedy trial pertains only to those "accused" in criminal prosecutions, it is the holding of *Utley* that identifies to whom the right to a speedy trial is applicable, those who have undergone formal grand jury action or the actual restraints of arrest. *Id.* at 493. *See also State v. Wood*, 924 S.W.2d 342, 345 (Clearly, to be an "accused" one must be faced with a "formal accusation.").

This Court in *Moon* found that, although the "issuance of a probation violation warrant serves as a type of accusation," it was not a formal accusation as defined by *Utley*. *Moon*, 2025 WL 1672885, *11 (citing *Utley*, 956 S.W.2d at 492). Instead, in the context of a probation revocation proceeding, "the arrest or restraints of an arrest" meet the definition of formal accusation. *Id.* Accordingly, we agree with this Court's decision in *Moon* that it is the arrest on the revocation warrant that formally accuses a probationer of their violation; therefore, it is that date which is to be used to calculate the delay for purposes of the *Barker* analysis.

The defendant contends that because the facts in *Utley* involved an accusation of new criminal charges, and not an accusation of a probation violation, the holding in *Allen* continues to control. Yet, if the holding of *Utley* is limited to only new criminal charges, then the natural consequence of the defendant's contention is that during the period of time between the issuance of a warrant and the arrest of its recipient, a probationer accused of a violation enjoys a greater right to a speedy trial than a citizen that has not been convicted of a crime. While the defendant terms this conflict as "superficial," we disagree. To grant probationers a greater right than that enjoyed by a non-convicted citizen would distort the punitive interest of our criminal justice system. The law of Tennessee is replete with instances of diminution of a probationer's rights upon conviction. In fact, "[i]nherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled.'" *State v. Hammonds*, 2006 WL 3431923, at *9 (Tenn. Crim. App. Nov. 29, 2006) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, (1987) (internal citations omitted)). *See e.g. State v. Hamm,* 589 S.W.3d 765, 777 (Tenn. 2019) (Probationers experience a diminished expectation of privacy.); *State v. Hayes*, 190 S.W.3d 665, 669 (Tenn. Crim. App. 2005) (Probationers are not entitled to full due process rights at revocation hearings.); Tenn. Code Ann. § 40-35-303(d)(6) (Probationers are subject to the elimination of their right to bear arms.); Tenn. Code Ann. § 40-35-303(d)(7) (Probationers' freedom of movement is subject to geographical restrictions.) Therefore, allowing a probationer to possess a greater right than that provided to a non-convicted citizen is simply contrary to the spirit of our statutory and common law. Accordingly, we reject the

- 7 -

defendant's contention that the holding in *Utley* should be excluded from the case at bar. To be clear, our conclusion that *Moon* and *Utley* are controlling in our review of the instant matter is nothing more than clarifying the extent to which *Utley* is applicable to probationary matters. Again, to hold otherwise would be to grant greater constitutional protection to an individual who has been convicted of a crime and serving a sentence on probation than the protections provided to an individual that has not been convicted of a crime and is still presumed innocent of any charges. Such cannot be the intent of our supreme court.

Further, as this and other courts have appreciated, probationers are protected by due process and statutory protections prior to their arrest on a revocation warrant. *Moon*, 2025 WL 1672885, at *12 (citing *Utley*, 956 S.W.2d at 494); *See also Goldsberry*, 2025 WL 3633824, at *7. As the United States Supreme Court noted in *Betterman v. Montana*, while a "presumption-of-innocence-protective-speedy trial right is not engaged" in the period prior to an arrest, there remains other safeguards to prevent excessive delay on the part of the State. *Betterman,* 578 U.S. 437, 447 (2016). Our supreme court has recognized the same protections provided to a probationer prior to being arrested for a warrant in Tennessee. "[A]n unreasonable delay between the commission of the offense and the arrest may violate the defendant's constitutional rights if the delay results in prejudice or was part of a deliberate, purposeful and oppressive design for delay." *State v. Baker*, 614 S.W.2d 352, 354 (Tenn. 1981) (quoting *Halquist v. State*, 489 S.W.2d 88, 93 (Tenn. Crim. App. Oct. 4, 1972)). "The stages prior to arrest are protected by the statutes of limitations and due process principles." *Moon*, 2025 WL 1672885, at *12 (citing *Utley*, 956 S.W.2d at 493). Consequently, in the period between the issuance of the revocation warrant and its recipient's arrest, probationers' rights are protected; therefore, the elimination of the right to a speedy trial in that period will not leave them vulnerable to maliciously intended delays by the State.

Upon finding this Court's holding in *Moon* persuasive, we conclude that a probationer's right to a speedy trial is triggered upon the arrest on the revocation warrant. Here, the revocation warrant was served upon the defendant on December 26, 2024, and he was taken into custody. The accusation of violation was heard at a hearing on March 28, 2025, after an approximate three-month delay. Therefore, because the delay between the formal accusation of the defendant and the hearing on that accusation was less than one year, the defendant has failed to show the delay was "presumptively prejudicial." *See Utley*, 956 S.W.2d at 494. Accordingly, we need not consider the remaining *Barker* factors and conclude the defendant has suffered no violation of his right to a speedy trial.

## II.     Notice of Absconsion

The defendant claims that the trial court violated his right to due process by relying on absconscion, an allegation not noticed in the revocation warrant. The State responds that the defendant waived this issue by failing to object during the hearing. The State also argues that the trial court relied on other grounds alleged in the warrant, rendering any reliance on absconscion harmless. We agree with the State.

During probation revocation proceedings, defendants are entitled to "minimum due process rights." *State v. Yoc*, No. M2018-00585-CCA-R3-CD, 2020 WL 672293, at *5 (Tenn. Crim. App. Feb. 11, 2020) *no perm. app. filed* (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). This includes written notice of the alleged violation. *State v. Dooley*, No. E2023-00881-CCA-R3-CD, 2023 WL 8889530, *3 (Tenn. Crim. App. Dec. 26, 2023). Actual notice of the alleged violation is also sufficient in a probation revocation proceeding. *Id.* It is a due process violation to revoke a defendant's probation "based on grounds not alleged and noticed to the defendant." *State v. Conyers*, No. E2004-00360-CCA-R3-CD, 2005 WL 551940, at *4 (Tenn. Crim. App. Mar. 9, 2005). However, in the event of a trial court's partial reliance on a ground for revocation not noticed to the defendant, the error is harmless "if the trial court also relied upon properly noticed grounds supported by the evidence." *State v. Munn*, No. W2022-00675-CCA-R3-CD, 2023 WL 2607676, at *4 (Tenn. Crim. App. Mar. 23, 2023) (quoting *State v. McGill*, No. M2015-01929-CCA-R3-CD, 2016 WL 3947694, at *4 (Tenn. Crim. App. July 18, 2016)).

Here, the revocation warrant lists four bases for revocation of the defendant's probation: failure to pay required fees and court costs, failure to pay required fines, a positive drug test for marijuana, and resignation of employment without permission. While the warrant did not charge the defendant with failure to report or absconsion, proof at the hearing established that after the defendant's failed drug test in 2002, Ms. Maness had no contact with the defendant. At the conclusion of the hearing, the trial court concluded that the defendant had violated the conditions of his probation in a substantial way, finding that the defendant tested positive for marijuana, resigned his employment, and failed to make payments regarding his court costs and fines. Ultimately, the trial court stated that "there's no question in the Court's mind that [the defendant] violated probation and absconded from probation."

The defendant argues that the trial court's reliance on his absconsion from probation as a basis for revocation violated his right to due process because it was not noticed in the revocation warrant. This argument, however, depicts the trial court's decision to revoke the defendant's probation as solely based upon his absconscion. We disagree with this characterization of the trial court's determination. In this case, the trial court did not find the defendant violated the conditions of his probation exclusively by absconding. Instead,

- 9 -

the trial court found that the defendant had violated his probation based on the four noticed violations and, then, cited his twenty-two-year absconsion. The transcript of the hearing establishes that the trial court relied on multiple grounds that were noticed in the warrant in order to revoke the defendant's probation.

Regardless, we agree with the State that the defendant failed to object on due process grounds to the trial court's finding of absconsion at the hearing. Generally, an issue raised for the first time on appeal is waived. Failure to object at the probation revocation hearing on due process grounds waives the issue for appellate purposes. *State v. Weld-Banks*, No. M2022-01665-CCA-R3-CD, 2024 WL 370105, at *2 (Tenn. Crim. App. Jan. 31, 2024). "It is elementary that a party may not take one position regarding an issue in the trial court, change his strategy or position in mid-stream, and advocate a different ground or reason in this Court." *State v. Dobbins*, 754 S.W.2d 637, 641 (Tenn. Crim. App. 1988). *See* Tenn. R. App. P. 36 ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.") *But see State v. Stewart*, No. W2019-02158-CCA-R3-CD, 2021 WL 1697302, at *3 (Tenn. Crim. App. Jan. 27, 2021) (citing *State v. McCormick*, No. 01C01-931C00437, 1994 WL 567987, at *3 (Tenn. Crim. App. Oct. 13, 1994).

The transcript shows that the defendant's lack of reporting and, specifically, an allegation of "absconsion" were discussed repeatedly at the revocation hearing. Ms. Maness testified repetitively to the fact that the day of the defendant's failed drug test was the last time he reported. The defendant failed to contemporaneously object to this testimony. Additionally, the transcript shows that the trial court found that the defendant had absconded, to which the defendant did not object. In addition, the defendant failed to raise any objection concerning notice at the probation revocation hearing. Instead, the defendant relied solely upon his argument that the delay in the proceedings was a violation of his right to a speedy trial. Accordingly, because the defendant did not contemporaneously object at the hearing or object on due process grounds, the issue is waived for our consideration.

### III. Trial Court's Determination of Revocation and Disposition

A trial court's decision to revoke probation is reviewed for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). "A probation revocation proceeding ultimately involves a two-step inquiry. A trial court, upon finding by a preponderance of the evidence that a defendant violated the conditions of his probation must determine (1)

whether to revoke probation, and (2) the appropriate consequence to impose upon revocation." *Id.* at 753.

### a. **Trial Court's Decision of Revocation**

A trial court has statutory authority to revoke a suspended sentence upon finding that the defendant violated the conditions of the sentence by a preponderance of the evidence. Tenn. Code Ann. § 40-35-310, -311; *see State v. Turner,* No. M2012-02405-CCA-R3-CD, 2013 WL 5436718, at *2 (Tenn. Crim. App. Sept. 27, 2013). "The trial judge has a duty at probation revocation hearings to adduce sufficient evidence to allow him to make an intelligent decision." *State v. Leach,* 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995) (citing *State v. Mitchell,* 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). If a violation is found by the trial court during the probationary period, the time within which it must act is tolled and the court can order the defendant to serve the original sentence in full. Tenn. Code Ann. § 40-35-310; *see State v. Lewis*, 917 S.W.2d 251, 256 (Tenn. Crim. App. 1995).

To overturn the trial court's revocation, the defendant must show the trial court abused its discretion. *See State v. Shaffer,* 45 S.W.3d 553, 554-5 (Tenn. 2001). In revocation cases, the trial court abuses its discretion when the "record contains no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Id.* at 554 (citing *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)). "The evidence need only show the trial judge has exercised conscientious judgment in making the decision rather than acting arbitrarily." *Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. 2022).

Here, the trial court's determination that the defendant violated the conditions of his probation was not an abuse of discretion. Ms. Maness testified at the revocation hearing specifically to the allegations of testing positive for marijuana and resignation of employment. In addition, Ms. Maness testified to the defendant's lack of reporting after his failed drug test and his twenty-two-year absence from supervision. At the conclusion of the hearing, the trial court found the defendant had violated the conditions of his probation. Upon review, the record contains sufficient evidence to support the trial court's findings. Therefore, in the first step of its discretionary analysis, we conclude the trial court did not abuse its discretion in revoking the defendant's probation.

### a. **Trial Court's Determination of Disposition**

Having concluded that the trial court's determination to revoke the defendant's probation was not an abuse of discretion, this Court must separately review the trial court's determination of the consequence imposed on the defendant. When a defendant's

probation is revoked, the trial court has "discretionary authority to: '(1) order confinement; (2) order execution of the sentence as originally entered; (3) return the defendant to probation on appropriate modified conditions; or (4) extend the defendant's probationary period by up to two years.'" *State v. Fleming,* No. E2017-02352-CCA-R3-CD, 2018 WL 6787580, at *2 (Tenn. Crim. App. Dec. 26, 2018) (quoting *State v. Brawner*, No. W2013-01144-CCA-R3-CD, 2014 WL 465743, at *2 (Tenn. Crim. App. Feb. 4, 2014)) (citations omitted).[5]  "The determination of the proper consequences of the probation violation embodies a separate exercise of discretion."  *Id.* (citing *State v. Reams,* 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007)).  The trial court may consider factors such as the "nature and seriousness of the violation at hand, the defendant's previous history on probation, and the defendant's amenability to future rehabilitation."  *State v. Rand*, 696 S.W.3d 98, 106 (Tenn. Crim. App. May 31, 2024).

While it is "not necessary for the trial court's findings to be particularly lengthy or detailed, sufficient reasoning must exist to promote meaningful appellate review." *Dagnan*, 641 S.W.3d at 759 (citing *State v. Bise,* 380 S.W.3d 682, 705-06 (Tenn. 2012)). The Tennessee Supreme Court also clarified this Court's review on appeal is the same standard of review applied in the context of sentencing decisions: "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record."  *Id.* at 6.

In this case, at the conclusion of its ruling, the trial court found that the defendant was "not a good candidate for probation because he's demonstrated he won't report." Further, the trial court noted the defendant's three new convictions that occurred while the probation revocation warrant was pending.  Although the trial court's consideration of alternative options for the defendant was limited, the record reflects the trial court eliminated alternative consequences as being no longer appropriate for the defendant.  This is sufficient to show the trial court made a separate discretionary decision to impose incarceration.  We conclude the trial court's statements are sufficient for our review and that no abuse of discretion was made.

## IV.    Defendant's Probation Revocation Order

Finally, the defendant challenges the trial court's order sentencing the defendant to serve six years in confinement.  Specifically, the defendant argues that because he successfully completed over three years on probation prior to the issuance of the revocation warrant on July 8, 2002, his revoked probationary term should have been for three years.

---

[5] Tenn. Code Ann. §40-35-308(c)(1) statutorily limits trial courts to a maximum of one year extension of probation.

Therefore, the trial court's determination ordering the defendant to serve six years was an error.

A trial court has no jurisdiction to revoke a defendant's probation once that sentence has expired. *State v. Myatt*, 2020 WL 406852, at *3 (Tenn. Crim. App. Jan. 24, 2020). "[I]f a defendant successfully completed a probationary sentence, the trial court is without authority to revoke probation and order service of the original sentence." *State v. Hunter*, 1 S.W.3d 643, 646 (Tenn. 1999). A defendant's probationary period may be interrupted by the issuance of a revocation warrant. *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001).

The probation revocation order issued by the trial court designated the defendant's length of effective sentence as six years, a compound of his two three-year sentences. The record indicates that the defendant's first three-year sentence began on October 19, 1998, expiring on or about October 18, 2001. Since the revocation warrant was issued on July 8, 2002, it did not interrupt the first probationary period. Therefore, the defendant's first three-year probationary sentence, case number 96-193, had expired when the revocation warrant was issued. Accordingly, we reverse the trial court's revocation order as it relates to case number 96-193, and remand to the trial court for entry of a corrected order.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the trial court's denial of the defendant's motion to dismiss and the revocation of the defendant's probation. As to the disposition of the defendant's probation, we affirm the determination of imprisonment as disposition in case number 96-195, but we reverse and remand for entry of a corrected order in case number 96-193, as specified in this opinion.

s/ *J. ROSS DYER*
J. ROSS DYER, JUDGE

- 13 -